JAMES LUTHY, Plaintiff in Error, *v.* S. WOODS ET AL., GANAHL ET AL., Defendants in Error; COLE ET AL., Interpleaders, Plaintiffs in Error.

May 21, 1878.

1. A provision in a building-contract between the contractor erecting a schoolhouse and the Board of Public Schools, by which it is agreed that the latter may retain in their hands a certain fund out of which to meet the demands of material-men, is valid, and is supported by the consideration which supports the remainder of the contract.

2. Where, in accordance with the intention of all the parties, the board retains the fund for the payment of the subcontractors, equity will treat the transaction as an assignment of the fund, and will apply it to the payment of these subcontractors, to the exclusion of any other creditors of the original contractor.

3. The right of the plaintiff in the present case to sue in equity without having first obtained a judgment at law having been determined in his favor in *Luthy* v. *Woods*, 1 Mo. App. 168, cannot now be called in question.

ERROR to St. Louis Circuit Court.

*Affirmed.*

A. R. TAYLOR, for plaintiff in error.

SAMUEL KNOX, JACOB KLEIN, S. N. TAYLOR, MARTIN & LACKLAND, R. S. VOORHIS, DONOVAN & CONROY, and FORD SMITH, for defendants in error.

HAYDEN, J., delivered the opinion of the court.

The substance of the petition in this case is given in the report of the case of *Luthy* v. *Woods*, 1 Mo. App. 167, and need not be here repeated. The Board of Public Schools answered that it was a public corporation; that about November 4, 1872, it had entered into a written contract with Woods & Barnes, the debtors of the plaintiff, by which they agreed to build a certain school-house for the board for a given sum, which was to be paid to them only on their full compliance with the terms of the contract; that thereby Woods & Barnes agreed to deliver the building free from all mechanics' and other liens, and to furnish satisfactory evidence that all the laborers and material-men had been paid; and that in case of failure so to do, the Building Committee might retain necessary amounts to meet claims of such persons until such claims were satisfied. The answer then set forth the names of various persons who had furnished materials to Woods & Barnes for the school-house, and the amounts which the latter had failed to pay, aggregating about $6,080; and admitted that there was in the board's hands $2,442.30 which was claimed by the material-men, and by the present plaintiff, and also by other parties

who had brought suits. The board asked leave to pay the fund into court, and it afterwards did so, and was discharged.

Ganahl *et al.* filed interpleas, admitting the substance of the answer of the board, and claiming that they were subcontractors under Woods & Barnes, to whom they had given notice, they said, of their unpaid claims, as well as to the board. Cole *et al.*, who, as well as the plaintiff, are plaintiffs in error here, filed an interplea, claiming that they were subcontractors, had recovered a judgment against Woods & Barnes on their demand, and that they had, before the plaintiff filed his petition, filed a similar bill to have their demand paid out of the fund; that their case had been decided adversely to them, and was pending by writ of error. Replies were filed by the respective parties. The court below found that the fund in court arose out of the building of the school-house; that Ganahl *et al.* were entitled to their proportions out of the fund; that Cole *et al.* were similarly entitled, and in the same ratio; and that the plaintiff had no right to share in the fund as against the interpleaders.

The question as to the right of the plaintiff in this case to sue in equity without having first obtained a judgment at law, was passed upon in *Luthy* v. *Woods, supra.* The plaintiff has proceeded upon the faith of that decision, and it should not be disturbed, in any event, as against him. But as it seems to me, on a question involving the dividing line between law and equity and the right to trial by jury, important to keep the adjudicated cases harmonious, and to adhere to principles upon which they all can be reconciled, I desire to say that I do not assent to the decision in *Luthy* v. *Woods*, even as subsequently interpreted. In my view, as there was here no original ground of equity jurisdiction, the plaintiff should have obtained a judgment at law. As the plaintiff was a mere general creditor, showing no trust, there was no trust fund to bring the case within what is said in *Russell* v. *Clark*, 7 Cranch, 89; *O'Brien* v. *Coulter*,

2 Blackf. 421; and *Miller* v. *Davidson*, 3 Gilm. 523, and therefore no jurisdiction on the distinct ground of trust. If the remarks made in those cases do not proceed upon the ground of a fund held in trust, it would seem that they are *dicta*, and not supported by the adjudged cases. I am unable to find any ground of jurisdiction in the fact that under the statute the School Board could not be garnished. Equity does not supplement the statutory law, or, where from motives of policy the Legislature have denied a remedy, afford what has thus been refused. Nor, since the alleged debtors could here have been reached by legal process, and a judgment against them first procured, can I see how the jurisdiction can be maintained on the ground that no issue was raised as to the plaintiff's demands. As jurisdiction attaches, if at all, at the institution of the suit, this argument appears to me no more satisfactory than that by which it is maintained that while the chancellor may not, without a judgment first had, decide common-law issues arising out of tort, and subject a fund to a claim, for instance, for trespass, he may, without any distinct ground of equity jurisdiction, try a case for unliquidated damages arising out of contract. But this subject need not here be further pursued, as in the case of *Kent* v. *Curtis*, 4 Mo. App. 121, decided since *Luthy* v. *Woods*, the present judges of this court severally expressed their views in regard to the question.

Proceeding upon the basis that the plaintiff has a standing in a court of equity, the question is as to the legal effect of the contract between the School Board and Woods & Barnes. It is contended by the plaintiff that the provision by which it was agreed that the board might retain amounts to meet the claims of material-men is invalid, for the reason that this provision is without consideration moving from the board; that as there was no mechanic's lien on the public-school house, hence the consideration failed. As this term of the contract was not against public policy, or illegal for any other reason, it is not easy to see why the consideration

which supports the rest of the contract should not support this provision also. It is enough to say that the board so provided, and the contractors undertook the work on that condition, as much as on any other in the contract. But, apart from this, the board had an obvious interest, which equity recognizes, in seeing the subcontractors paid. The fact, too, that a mechanic's lien was claimed, with some show of right, was sufficient. The board had secured itself from possible annoyance by this provision, and it does not lie with the plaintiff to say the board could not make use of a power because its exercise was optional with the board. By the contract which Woods & Barnes had made, the money in the hands of the board was subject to the exercise of this power, and the power was exercised. The board received notice of these demands, and determined to hold, and did hold, this money (afterwards paid into court by the board), " for the protection of subcontractors and laborers," according to the terms of the contract. Unless the plaintiff has a right superior to that of Woods & Barnes, or is entitled to repudiate a contract by which they were bound, it is difficult to see how he can sustain, as against these subcontractors, a claim to this contract-money.

This action was brought on December 23, 1873. In November, 1873, the order of Woods & Barnes that the amount due them on the contract might be distributed *pro rata* among the subcontractors had been presented to the secretary of the School Board, who said that the officers of the board had determined to hold the remaining money for those entitled to it under the contract. Other action of the officers of the board shows that this was the fact; and there can be no doubt that it was so held by common consent of the board, of Woods & Barnes, and of the subcontractors, before the present suit was brought. Of the intention of the parties there can be no doubt; and to this intention equity will give effect, and, especially in view of the terms of this contract, treat the transaction as an equitable assign-

ment of the fund. *Walker* v. *Mauroe*, 18 Mo. 564; *Kimball* v. *Donald*, 20 Mo. 577; *Bank of Commerce* v. *Bogy*, 44 Mo. 13. As against the other subcontractors, Cole *et al.* stand in no better position than the plaintiffs, since the suit of Cole was not brought until December 12, 1873.

It is not necessary to resort to any supposed equity arising merely from the fact that these subcontractors furnished materials which were used in the building. The equity of the interpleaders as against the plaintiff is clear, and arises from the terms of the contract, from the acts of the board, of Woods & Barnes, and of the subcontractors, whose assent, even if it could not be inferred from the evidence, would be presumed, as the action of the contractors and the board was clearly for the benefit of the subcontractors.

No error is shown in the decree of the court below, and it will, with the concurrence of all the judges, be affirmed.