RODGERS v. THE BANK OF PIKE COUNTY, *Appellant.*

1. **Wife's Separate Means**: MARRIED WOMAN'S ACT OF 1875 CONSTRUED. Where the wife sells her real estate for money, the transaction amounts to a purchase of the money with her separate means within the meaning of those terms as used in the married woman's act of 1875, (Acts 1875, p. 61). If such money comes into the possession of the husband he cannot dispose of it without her consent in writing.

    Accordingly in a case where a husband having possession of his wife's money so acquired, deposited it in bank, and subsequently drew it out and appropriated it to his own use, the bank was held liable to make good the amount to her.

2. **Wife's Ratification of Husband's Contract.** The evidence to establish a ratification by the wife of a contract made by her husband as her agent, must be of an unmistakable character.

3. **Husband and Wife**: PRACTICE: JEOFAILS. A married woman cannot maintain an action alone ; and where an action is so brought, and the attention of the trial court is called to the non-joinder of the husband, both by answer and by prayer for instruction to the jury, a judgment in the wife's favor will be reversed. The statute of jeofails does not cure the error.

*Appeal from Louisiana Court of Common Pleas*—HON. G. PORTER, Judge.

This was a suit on certificate of deposit for $400. The plaintiff was a married woman. Her husband did not join in the action. The facts, as developed at the trial, were as follows: Plaintiff being the owner of certain real estate sold it, and authorized her husband to collect the purchase price. This he did and deposited the amount in his own name with the defendant bank, claiming it as his own. Afterwards, during the same day, he returned to

the bank, and asked the cashier if his creditors could reach the money, and upon being informed that they could if they had judgment, he directed the cashier to transfer the deposit to his wife's (the plaintiff's) credit, which was done and the certificate sued on was issued in her name. He, at the same time, directed the cashier to pay out the money on checks drawn by either himself or plaintiff. It was afterwards paid out on checks drawn in plaintiff's name, the signature being executed in every instance but one by her husband. When she authorized him to collect the money, she did not tell him to deposit it in bank, but he informed her a few days afterwards that he had deposited it in her name. She afterwards called at the bank with the certificate and learned that he had already drawn out $100. She made no answer when told of this.

The court refused the following declarations of law asked by the defendant:

1. Although the court may believe from the testimony that plaintiff did not give her husband special authority to deposit the money in question in defendant bank; yet if the court further finds from the testimony that plaintiff authorized or permitted her husband to collect money belonging to her, and that in pursuance of said authority her said husband did collect plaintiff's money and deposit the same in said bank, then the defendant is protected in paying out said money under the directions of plaintiff's husband.

2. If the judge, sitting as a jury, believes from the testimony that the plaintiff's husband, on the 16th day of December, 1875, as the agent of his wife, deposited in the Bank of Pike County $400 to the credit of plaintiff, and instructed the cashier to pay checks in his wife's name, drawn either by himself or her; and if the court further finds that all of said money was paid by said bank, prior to the institution of this suit, upon checks in plaintiff's name, drawn by her said husband, then the verdict should be for defendant.

3. If the court finds, from the testimony that the plaintiff knew that her husband, was drawing checks against her account and was appropriating her money to his own use, and that the plaintiff failed to notify the officers of the bank not to pay checks drawn by her said husband, then the verdict should be for the defendant; provided the court further finds that the plaintiff's husband in making said deposit, acted for his wife as her agent; and, further, that all of said money was paid (under the directions and instructions of her said husband) prior to the institution of this suit.

4. If the court finds, from the testimony, that plaintiff was a married woman at the time of the institution of this suit, then she cannot maintain this action without making her husband a party, and the verdict should be for the defendant.

*W. H. Biggs*, for appellant.

*Wagner, Dyer* and *Emmons*, for respondent.

NAPTON, J.—There are two questions presented by this record. 1st. The defendant claims that the money, which **1. WIFE'S SEPARATE MEANS: married woman's act of 1875 construed.** was the proceeds of the sale of the wife's land, was reduced to the husband's possession, and, therefore, that the bank who received the money from the husband, as his money, had a right so to regard it. That this was the common law is conceded, but it is contended that the act of 1875 (Sess. Acts p. 61) taken in connection with the 14th section of the statute in relation to married women, (2 Wag. Stat. 935) has changed the law in this respect; and this is my opinion, and that of a majority of the court. The provision of the act of 1875, is as follows: "Any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest, inheritance, or by purchase with her separate

money, or means, or be due as wages of her separate labor, or have grown out of any violation of her personal rights, shall together with all income, increase and profits thereof, be and remain her separate property, and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband. This act shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife. Provided, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care, or protection thereof, but the same shall remain her property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber, or otherwise dispose of the same for his own use and benefit." Although the language of this section does not literally apply to this case, the exchange or sale of the wife's land, and its conversion into money, makes the money which results from the sale, if not literally a purchase by her means, certainly an acquisition of personal property by her means. The word means is a very broad one, and the spirit and intent of the act is to embrace such a case. To put an end to all investigations, the law plainly requires the assent of the wife to be in writing, and there was no such assent proved in this case.

2. The second defense presents more difficulty. It is conceded that the wife can make her husband her agent, but the agency must be clearly established.

2. WIFE'S RATIFICATION OF HUSBAND'S CONTRACT.

His declarations will, of course, not be evidence of his agency. The question then for the court, raised by the instructions, was whether there was any evidence of such agency. If there was any legitimate proof of such agency the instructions should have been given. The only evidence of such agency offered in the testimony was that of the wife. She states that being informed by her husband that he had deposited the money to her credit in the bank, and after finding the certificate

of deposit in her husband's pocket, she went to the bank and asked the cashier how much money she had on deposit, and was informed that there was $300. To this she made no reply, and the statement of the cashier is to the same effect. She was aware that the proceeds of her land was $400, and was, therefore, advised that $100 of her money had been used by her husband. There is no doubt that the evidence to establish a ratification by the wife of a contract made by the husband, as her agent, must be of an unmistakable character. And it is remarked by Judge Cole, in *McClaren v. Hall*, (26 Iowa 305) that it is necessary, in order to bind her, that the husband should claim to act as her agent. In this case it appears, from the evidence of the cashier, that the husband did not claim to act as agent of his wife, but deposited the money as his own, and never changed the form of the deposit until he was advised that his creditors might levy on it if deposited in his own name. The opinions of this court recognize the principle asserted in *McClaren v. Hall*, and reiterated in Bishop's Treatise on the Law of Married Women, vol. 2, § 395–6–7. *Eystra v. Capelle*, 61 Mo. 578.

It is the obvious intent of our recent legislation, to restrict within the narrowest limits, the power of a husband over his wife's personalty. Such legislation may lead to hardships, as it does apparently in the present case; but the judiciary have no concern with the policy or impolicy of legislative enactments. The legislature have required the *written* assent of the wife, to the husband's reduction of her personal property to his possession. They have not prohibited her from making him her agent, nor altered the common law in that respect. But the spirit of legislative enactments corresponds with such judicial decisions as require very clear and unequivocal proofs of such agency. As was well said by Judge Cole, in *McClaren v. Hall*, " This is for the reason, that in the general experience of the past, if not in the philosophy of the present, the wife is under the control of, and subordinate to the husband,

and neither good law nor sound reason will require the wife to destroy the peace of her family, and endanger the marriage relation by open repudiation or hostile conduct towards her husband, in order to save her property from liability for his unauthorized contracts." There was evidently some want of care on both sides in this case. The cashier knew very well that Rodgers, the husband, deposited this money as his own, and not as agent for his wife, and he supposed it was only placed in his wife's name to avoid executions against the husband. He therefore made no inquiries when Mrs. Rodgers called. She knew that the money was hers, and that her husband had received no authority from her to use it; but although apprised by the cashier that $100 was gone, she was silent. Whether this silence on her part is to be construed as some evidence of a recognition of his agency in the management of this fund, is really the only question in the case on its merits.

The judgment must be reversed at all events, because of the non-joinder of the husband; 2 Wag. Stat., p. 1001, § 8. The Statute of Jeofails (2 Wag. Stat. p. 1036, § 19), does not reach a case of this sort, where the defense was made by answer on the trial and called to the attention of the court by an instruction. Judgment reversed and case remanded. All concur except Hough, Judge, who concurs in the result.

3. HUSBAND AND WIFE: practice: jeofails.

REVERSED.