Rieper v. Rieper.

RIEPER v. RIEPER, *Defendant, and* WEHRMANN, *Appellant.*

1. **Gift by Wife to Husband.** If it be allowable at all for a married woman to make a parol gift of her separate personal property to her husband, since the Married Woman's Property Act of 1875, (Acts 1875, p. 61,) the conservation of the legislative purpose as evinced in that act, should at least incline the courts to exact the most cogent proof to establish such a gift.

2. **Conversion by Husband of Wife's Property:** HER REMEDY: EQUITY. A married woman whose separate personal property had, without her consent, been delivered by her bailee to her husband, and by him been converted to his own use, brought this action to subject to the payment of the indebtedness thus arising a stock of goods in the hands of her husband, and praying for the appointment of a receiver. The goods were not the identical property converted, but were purchased in part, but in part only, with the proceeds of that property. *Held,* that the equitable principle which prevents the following of a trust fund after it has changed its form and become mingled with and undistinguishable from the rest of the trustee's property, had no application, and that the action could be maintained.

3. ———: ———: CREDITORS' BILL: DISTRIBUTION OF FUND. *Held,* also, that in such case the married woman had no lien at the outset, and did not acquire one by the institution of the action; that her position was that of a general creditor, and she was entitled to share *pro rata,* and not otherwise, with other general creditors who had come in and proved up their demands before distribution of the fund in the hands of the receiver; but that her equity was superior to that of the bailee, who was also one of the general creditors

and had proved up, and that she was entitled to full satisfaction before he received anything.

*Appeal from Franklin Circuit Court.*—HON. JOHN W. BOOTH, Special Judge.

REVERSED.

*John R. Martin* for appellant.

*J. C. Kiskaddon* for respondent.

PHILIPS, C.—In May, 1878, the plaintiff filed her petition against the defendant Charles Rieper, alleging in substance, that she was married to defendant on the 8th day of August, 1877, in the city of St. Louis; that at the time of her marriage she was the owner and possessed of $1,400 in money, and other personal property named, and that her husband had no property whatever; that defendant immediately after the marriage took possession of said money and has never accounted therefor to her; that soon afterward he began and continued toward her a course of treatment that was contemptuous, cruel and at times barbarous—specifying many of the acts. It was then alleged that out of said money defendant used about $65 in purchasing furniture for their house, and the balance he used in purchasing a stock of goods at South Point in Franklin county, of one Klebba, by whose name the store was known; and that said money is all invested in the goods now in said store; that defendant is threatening to dispose of said goods, and to leave the country and entirely desert the plaintiff, and refuses to account to her for said money or any part thereof; that if he sells or otherwise disposes of said goods, etc., she will have nothing wherewith to support herself or her infant daughter by her former husband. It is then averred that she did not at any time consent in writing for defendant to reduce said money or property to his possession. She prayed the court for the appointment of a receiver to take possession of the goods and sell the same

23—79

under the direction of the court, and that out of the proceeds the sum of $1,400 be set apart as her separate property, for the appointment of a trustee, etc., and for all proper and necessary orders, decrees, etc., and for all proper relief. The petition was verified by affidavit.

Afterward, at the July court plaintiff filed an application for an injunction in aid of the said suit, and for the appointment of a receiver. The defendant appeared and took issue, and on hearing the application for the appointment of a receiver the court granted the application and appointed the appellant here, Louis Wehrmann, receiver, who, pursuant to orders and directions of the court, accepted the appointment, qualified by giving the required bond, took possession of the said goods, and sold them as directed by the order of the court. The order of the court provided that any party interested might apply to the judge, in chambers, for further orders and directions, on giving reasonable notice to other parties in interest. At the November term of said court the said receiver filed his report as such receiver, showing the sale of the goods in compliance with the order of the court, and showing a net balance in his hands, after paying expenses, of $2,230.72, which report was approved by the court.

The defendant answered tendering the general issue, except as to the coverture, which he admitted.

Afterward, at the June term, 1879, Wehrmann came into court and filed an intervening petition, as the creditor of said Charles Rieper. He set out substantially the facts contained in the petition in regard to the purchase of the stock of goods from Klebba, alleging, however, that only $500 in cash were paid down, and that for the balance of the purchase money the defendant and petitioner, Wehrmann, executed their notes, payable to the order of Klebba and maturing at specified periods thereafter. It was averred that petitioner signed said notes as surety for defendant Rieper, but that he became said surety at the request of both plaintiff and defendant, on the assurance of plaintiff

that she would see him protected. He averred that at the instance of defendant he had taken up certain of said notes, amounting to the sum of $1,612.65, for which defendant had executed to him his note, dated November 12th, 1877, with interest from date at ten per cent; that defendant had made certain payments thereon, specified; that as such surety he had to pay the balance of said notes amounting to $1,400, with interest. The petition then alleged the insolvency of defendant, except as to said goods, and denied that the plaintiff was a creditor of her husband, and charged that her claim was a fraud upon defendant's creditors. It prayed the court to order the distribution of the proceeds of the goods in his hands among the creditors of defendant, Charles Rieper.

On the same day other creditors of defendant, merchants in St. Louis, A. Frank & Sons, Nave, Goddard & Co., Nulsen & Co., filed like intervening petitions, claiming to be creditors of Charles Rieper on account of goods sold him for said store. Their petitions alleged that the goods were sold to defendant with the knowledge and consent of plaintiff, and upon the faith of defendant's ownership of the store, and conclude with a like prayer for a *pro rata* distribution of the proceeds of the goods. Plaintiff answered the intervening petitions tendering the general issue, and re-asserting that the goods were purchased with her separate money, etc.

The cause was heard by Hon. John W. Booth, special judge. The evidence was voluminous. Plaintiff's evidence well sustained the allegations of the petition in respect to the misconduct of her husband. He seems to have acted toward his wife as if his whole purpose in marrying was to obtain possession of her money, and then spurn her. She had $1,400 when they married, and a mortgage for $700. It appears that in anticipation of this marriage, Rieper, who was wholly impecunious, had negotiated for this stock of goods. The night after his marriage his wife handed to him $1,061.90 of her money, as she claims, to

save or keep for her. He gave back to her $100 and the mortgage, and the next day they went to Franklin county, and she handed this money and mortgage to said Wehrmann to put in his safe. All are agreed that at least $900 of this money went into the stock of goods. Defendant Rieper ran the business in his name, ignoring his wife as much as possible. The stock of goods bought of Klebba amounted to $3,600 by invoice, and the additional goods bought in St. Louis, made the aggregate of goods between $5,000 and $6,000, obtained by defendant, yet the amount on hand as realized by the receiver, on favorable sales, showed only $2,230 on hand when plaintiff filed suit. What defendant did with the balance of this property is unexplained.

Wehrmann testified, when first on the stand, that a few days after Rieper and his wife had taken stock, preliminary to consummation of the trade they came to him and stated that Klebba wanted security, and that he consented to go on the notes at the request of plaintiff. The next day, after others of his own witnesses had sworn that Mrs. Rieper was not with her husband there, and was not present when the notes were made, Wehrmann asked to come back on the stand, and then stated that the day before this the plaintiff was there when he proposed that he go on the notes. When Charles Reiper, who seemed to be active against his wife throughout her struggle to save her own, was first on the stand, he testified that it was before he was married at all that Wehrmann agreed to go on the notes. As this was so utterly fatal to Wehrmann's claim that he had gone on the notes at the instance of Mrs. Rieper, this witness also came back on the stand next day and swore that it was after he was married when the notes were mentioned. Mrs. Rieper denied, in her testimony, the statement of Wehrmann touching his signing the notes at her instance, and denied all knowledge of the transaction.

The evidence on the behalf of the St. Louis merchants, intervening petitioners, was to the effect that they had sold

goods to C. Rieper in the belief that he was the owner of the concern at South Point, though the witness from the firm of Frank & Sons testified that in August, 1877, he heard Mrs. Rieper say she gave her husband $1,000, that was paid on the stock. Whether this was before or after the sale of the goods by the house to Rieper, does not appear.

The court found the issue for the plaintiff, that she was the owner of the sum of $900 in cash, at the time of the marriage, which she handed to Wehrmann for safe keeping after the marriage, and that he afterward, wrongfully and without her consent, delivered it to the husband, with the intent that he should invest it in the said stock of goods, which defendant did accordingly so invest; which sum remained so invested at the time of the institution of this suit, and that the same was and is the separate property of the plaintiff. The decree then recited the facts of the appointment of the said Wehrmann receiver, the sale of the goods, etc. It found that the St. Louis creditors were entitled to have their claims paid out of the fund rising on the sale of this property, *pro rata*, on the basis of the exclusion of the $900 from the aggregate indebtedness, after which the sum of $900 should be paid to plaintiff, and the balance be paid to petitioner Wehrmann. From this decree the petitioner Wehrmann has appealed to this court.

I. There is no question but the money, confessedly owned by the plaintiff at the time of her marriage in 1877, was her separate property, under the provision of the act of 1875. See Acts 1875, p. 61. This act declares, *inter alia*, that : "Any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest or inheritance, or by purchase with her separate money or means, etc., shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken under any process of law for the debts of her husband.

This section shall not affect the title of any husband to any personal property reduced to possession with the express assent of the wife, provided that said personal property shall not be deemed to have been reduced to possession by the husband, by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit."

It is not deemed important, in this case, to discuss the question, whether there is anything in this act that in anywise obstructs the doctrine recognized prior to the adoption of the act, that a married woman might make a valid gift of her separate property to her husband, because the evidence in this case is not sufficient to establish a gift of the money in question. Certainly, in view of the positive provision in the act of 1875, allowing of no evidence of a reduction of her separate personal property to possession by the husband, short of her "assent in writing," the conservation of the legislative purpose, as evinced in the said act, should incline the courts to exact the most cogent proof to establish a parol gift by the wife to the husband. The strong influence, which experience and observation have so long attested, of the husband over the mind and action of the wife, is in no degree less since the act of 1875 than prior thereto. And for that very reason, as observed by Judge Napton, in *Rodgers v. Bank*, 69 Mo. 563, "to put an end to all investigation the law plainly requires the assent of the wife to be in writing," to obtain title to her property by possession.

The fact that the court found from the evidence that the wife, in this case, left the money with Wehrmann, who turned it over to the husband, cannot destroy the right of the wife to go against the husband for the money or its proceeds. It is true, as held in *Rodgers v. Bank, supra*, if Wehrmann, in violation of his assumed duty to Mrs. Rieper,

turned the money over to her husband, the wife might have sued him directly at law as for a conversion. But in such action the husband would have been a necessary party to join with the wife. *Rodgers v. Bank, supra.* And it is quite manifest, from the evidence in this case, that the husband would not have permitted the use of his name for such purpose, as he aided Wehrmann on this trial against his wife.

II. Appellant contends that the action of plaintiff cannot be maintained because it is manifest from the evidence that the specific goods, in which plaintiff's money was invested, were not on hand at the time of the institution of this action. It is the well settled principle in equity that when the trust fund, like money, is turned into other form of property, and been so mingled with the mass of the trustee's property that it is undistinguishable from the rest, the right to follow it specifically ceases, " because that right depends on the power of identifying the original property through any change in its original form." *Mills v. Post*, 76 Mo. 425, affirming same case in 7 Mo. App. 519. The evidence in this case shows that the original amount of goods purchased was $3,600, to which were from time to time added other goods by purchases from the St. Louis creditor-merchants, and sales were made from the mass through a period of one year, averaging $10 or $15 a day. Whether or not any of the goods originally purchased were on hand when this suit was brought, is not ascertainable from the evidence. In such a state of the case the remedy between parties *sui juris* would unquestionably be an action at law for the value of the property thus merged in the mass. And if the petition in this case were so framed as to show that its sole object is to follow the specific fund into the goods, and to affix to them the trust as such, we could not, under the facts in evidence, sustain it. But in our opinion such construction of the petition would be too narrow. A *femme covert* cannot sue her husband at law. She can only, in circumstances like these, sue in equity. Story Eq. Plead., § 61; *Walter v. Walter*, 48 Mo. 140, 145.

Therefore the plaintiff had to resort to the form of action adopted in this case. The petition, conformably to the code of practice, sets out the facts constituting her cause of grievance. It shows that defendant obtained possession of her separate money without her written assent, and had invested the same in certain goods, etc., which was all the property he had; that he is squandering the property, and that she is in imminent danger of losing her debt unless he be restrained, and the property taken under the equity control of the court to enable her to realize the amount of her debt. The prayer of the petition is not to follow her money into the goods as a trust fund, but that the court appoint a receiver to take charge of the goods, and preserve the avails, and " out of the proceeds of said sale the sum of $1,400, (the amount of debt claimed,) be set apart for her sole and separate use," and a general prayer for relief. This is no more than asking for a judgment for her debt; and as her judgment could not be one *in personam,* she asks as a means of effectuating her judgment when obtained that the court administer the property in equity.

III. The question arises, however, that as plaintiff had no lien on the property enforceable as such, in equity, did she not stand as a general creditor, or more properly speaking, a creditor at large? And if so, did she occupy any vantage ground over the intervening petitioners who are also creditors at large ? If she did occupy the position of a general creditor she was only entitled to a *pro rata* distribution of the assets being administered in equity. By the mere institution of her suit she acquired no lien on the goods. The rule in equity is that " equitable assets shall be distributed equally and *pari passu,* among all the creditors, without any reference to the priority and dignity of the debts." 1 Story Eq., § 544. As the general creditors were all before the court in the same action before final decree, it follows that the assets in the hands of the court, through the receiver, should have been distributed ratably, *pari passu,* among all the creditors, unless some higher

equity interposed, barring some one of the petitioners from the full benefit of the rule.

As to the St. Louis creditors so named, there is nothing in the evidence conferring any higher equity than their claims. They should, therefore, be admitted to a *pro rata* distribution. And as between them and Wehrmann there is no inequality of right, and as to them he should be recognized in an equal *pro rata* share. But as between Wehrmann and the plaintiff, I am of opinion there is a superior equity in her favor in distributing the fund in question. It is true there is a conflict of testimony as to the circumstances under which he turned the money over to the husband. Whilst it is true the plaintiff, in one part of her testimony, admitted that she expected to put her money in the mercantile adventure, there was nothing in that which authorized the depositary, without her direction to him, to turn her money over to some one else to invest for her. Being a *femme sole* as to her separate money, she had the same undisputed right as any other property owner to make her own investments on such terms and conditions as she saw proper. But Wehrmann, as if in concert with her husband, to appropriate this fund as of the husband's, let him have it to buy the goods in his own name; and after her money was thus used and commingled with the husband's goods, she was in a measure at his mercy. Wehrmann to this extent is not without an agency in producing a loss to her, if one should result by reason of a lack of assets to re-imburse her. For this act of his, as already shown, he would have been liable to respond in damages to her, had she been free to sue him directly. The circuit court has found, on a conflict of evidence, that Wehrmann was at fault in his trusteeship. We will not reverse that conclusion. As against him, therefore, she should be made whole out of the assets resulting from the products of the property in which her money was thus invested, before he is admitted to a participation in that fund.

It must result from this conclusion, that the circuit

judge should have added to the indebtedness of the defendant the $900 due the plaintiff, which would have made the aggregate of indebtedness $5,129, instead of $4,229, as found in the decree. Taking the said sum of $5,129 as a basis, the decree should have been that after paying the costs, etc., the plaintiff is entitled out of the remainder of said sum of $2,230.72, to 900-5129, and the intervening petitioners as follows, to-wit: A. Frank & Son to 556-5129, Nave, Goddard & Co., 165-5129, Nulsen & Co., 63-5129, and Louis Wehrmann to 3434-5129. And as it appears that there is not sufficient of said sum to re-imburse the plaintiff the full amount of said sum of $900, by the admission of said Wehrmann to said distribution, it should be ordered and decreed that from the said distributive share of said Wehrmann there be retained so much as is necessary to make good to plaintiff the sum of $900.

The judgment of the circuit court is, therefore, reversed and the cause remanded, with direction to enter up judgment in accordance with this opinion. All concur.