THE CITY OF ST. LOUIS, Plaintiff, v. O'NEIL LUMBER COMPANY *et al.*, Defendants; JOHN M. DOYLE *et al.*, Appellants; O'NEIL LUMBER COMPANY *et al.*, Respondents.

St. Louis Court of Appeals, December 9, 1890.

1. **Municipal Corporations:** PRIORITY OF CLAIMS TO FUNDS PAYABLE UNDER CONTRACT. M., as principal, and H. and S., as sureties, entered into a contract with a city to do certain work. The work was abandoned by the principal, after its partial performance, and was then completed by the sureties, under an

arrangement with the city. Subsequently, creditors of the principal for materials and labor, which went into the work done by him, sued the city, seeking to subject the moneys payable under the contract to the payment of their claims. *Held* that, as the contract contained no provision giving to mechanics and materialmen any claim upon the sureties, the latter were entitled to be first paid out of these moneys to the extent of the actual cost of the work and materials supplied by them in the completion of the contract.

2. ——— : ———. Although a contract for public work authorizes a municipal corporation, out of funds payable under it, to pay claims for materials furnished to the contractor, and used in the work, the materialmen do not, by reason thereof, obtain any claim upon the funds until the municipality exercises the right thus conferred. *Held*, accordingly (THOMPSON, J., *dissenting* ), that, in the absence of the exercise, by the municipality, of its right to so apply such funds, materialmen may subject these funds to the payment of their claims by proceedings of equitable garnishment; and that, in the event of several such proceedings, the materialmen are not to be paid *pro rata*, but are entitled to priority of payment in the order of their suits.

*Per Thompson, J., dissenting:*

3. ——— : ———. A contract between a city and a contractor for the performance of public work required the contractor to furnish the city with satisfactory evidence that the claims of materialmen for materials which they had furnished for the work, and for which they were entitled to a mechanics' lien, had been paid, and provided that, if the contractor should fail so to do, the city should retain such part of the money payable to the contractor as it might consider necessary for the payment of such claims. The contractor absconded, leaving funds owing to him from the city, under the contract, and materialmen filed suits in equity to subject these funds to the payment of their claims, whereupon the city brought the funds into a court of equity, and procured an order requiring the claimants to interplead therefor. *Held* that these funds should be distributed among the materialmen *pro rata*, and not in the order of the institution of the suits against the city.

4. ——— : ———. *Held, arguendo*, that assets of a debtor, which are not vendible under an execution at law, and to which no lien can attach under proceedings at law, but which can only be reached and subjected to the demand of a creditor by the aid and process of a court of equity, are equitable assets; and that, when creditors of the owner of such assets seek to reach them by a suit in equity, the court will distribute them among all the creditors *pro rata*, and will not permit a race of diligence among the creditors for priority of payment.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED (*with directions, and certified to the supreme court*).

*Christian & Wind,* for appellants.

(1) Subcontractors are entitled in equity to payment out of a fund created in part by their own labor and materials in preference to those bound for the performance of the contract, and general creditors of the principal contractors. *Newhall v. Kastens,* 70 Ill. 156; *Luthey v. Woods,* 6 Mo. App. 71; *City v. Keane,* 27 Mo. App. 641. Section P of the contract should be so construed as to give it some meaning and effect. Bishop on Contracts [1 Ed.] sec. 579. (2) The O'Neil Lumber Company did not acquire any lien on the unpaid balance of contract price, numbered 2071, because there was at the time no balance due McLane for which he could have maintained an action. 2 Wade on Attachment, ch. 38, sec. 483; *Early v. Redwood City,* 57 Cal. 193; *Weil v. Tyler,* 38 Mo. 545; s. c., 43 Mo. 581.

*Rassieur & Schnurmacher,* for respondents Higgins and Sellers.

(1) A bill in equity, seeking to subject to the payment of a creditor's claim the assets of his debtor, in the hands of one beyond the reach of legal process, is in the nature of, and similar to, a garnishment at law. It is often styled an equitable garnishment. *Pickens v. Dorris,* 20 Mo. App. 1; *Pendleton v. Perkins,* 49 Mo. 565; *Lackland v. Garesche,* 56 Mo. 267. (2) In such a case, a court of equity will grant the creditor the same rights against the debtor's assets as he would have had in a court of law, had the assets been accessible by process. But no new rights are created; the court

merely undertakes to furnish a remedy. *Pickens v. Dorris*, 20 Mo. App. 1; *Pendleton v. Perkins*, 49 Mo. 565; *Lackland v. Garesche*, 56 Mo. 267. In a garnishment proceeding, only such funds can be reached by the creditor as belong to his debtor; the creditor's rights can be no greater than the debtor's. *Weil v. Tyler*, 38 Mo. 545; *Firebaugh v. Stone*, 36 Mo. 111; *Karnes v. Pritchard*, 36 Mo. 135. There is nothing in the contract which gives McLane's subcontractors a lien upon that portion of the fund. The obligation of the sureties is, by the terms of the contract, purely to the city. In this respect it differs from the bonds in the cases of *Luthey v. Woods*, 6 Mo. App. 67, and *City v. Keane*, 27 Mo. App. 642, cited by appellants.

*J. H. Trembley*, for respondent O'Neil Lumber Company.

(1) A bill, in the nature of an equitable garnishment, it is useless to say, is the proper proceeding for reaching funds belonging to a debtor in the treasury of a municipal corporation, and when the debtor has absconded, so that the claim cannot be reduced to judgment, a court of equity will entertain jurisdiction in the first instance, and give such a proceeding, founded on an ordinary claim, the same effect as that founded on a judgment at law, after the return of the execution *nulla bona*. *Pendleton v. Perkins*, 49 Mo. 565. (2) The claim of the O'Neil Lumber Company being for materials used in doing the work contemplated by the ordinance that appropriated the money now in court, its equities, apart from the question of priority, are equal to those of any other interpleader herein, and by its superior diligence in instituting proceedings on November 22, 1888, against McLane and the city, in the nature of an equitable garnishment, it acquired the right to be first satisfied out of the $976.11, then due McLane from the city. *City v. Keane*, 27 Mo. App. 642.

BIGGS, J.—On the seventeenth day of July, 1888, the municipal assembly of the city of St. Louis passed an ordinance, authorizing the Board of Public Improvements to contract for certain alterations and repairs at the House of Refuge. Section 2 of the ordinance is as follows: "The cost of the above work shall be paid by the city of St. Louis, and the sum of forty-five hundred dollars is hereby appropriated out of funds set apart for improvements, alterations and repairs of the House of Refuge." The work was let to one James McLane, under three separate contracts. Contract, numbered 2071, provided for the erection of two new privy buildings at a cost of twenty-eight hundred dollars. By contract, numbered 2083, McLane agreed to make certain alterations in the basement and in the dormitory of the old building, for the sum of eight hundred and fifty dollars. The third contract, numbered 2076, provided for furnishing lumber and laying the floor in the shoe-shop of the House of Refuge. The foregoing contracts were signed by McLane as principal, and the interpleaders, Thos. C. Higgins and John M. Sellers, as his sureties. Among other things, the contracts provided that, "in case the contractor shall abandon the work, * * * the commissioner of public buildings shall have power, under the direction of the Board of Public Improvements, to place such and so many persons as he may deem advisable, by contract or otherwise, to work and complete the work to be done, and to use such materials as he may find on the line of said work, or to procure other materials for the completion of the same, and to charge the expense of said labor and materials to the contractor; that this expense shall be deducted and paid out of such moneys as may then be due or may at any time thereafter grow due to him under the contract; and, in case such expense is less than the amount still due under the contract, had it been completed by the contractor, he shall be entitled to receive

the difference ; and, in case such expense is greater, the party of the first part ( which included the contractor and his sureties ) shall pay the amount of such excess.''

The contracts also contained the following provision : '' And said party of the first part ( which includes the contractor and his sureties ) hereby further agrees that he will furnish the said Board of Public Improvements with satisfactory evidence, that *all persons, who have done or furnished materials under this agreement and are entitled to a lien therefor* under any law of the state of Missouri, have been fully paid or are no longer entitled to such lien ; and, in case such evidence be not furnished, such amount as the board may consider necessary to meet the lawful claims *of the persons aforesaid*, provided said persons shall notify said board before the final estimates be returned, shall be retained from the moneys due the said party of the first part under this agreement, until *the liabilities aforesaid* may be fully discharged.'' Under paragraph S of the contracts, an estimate of the amount of the work done each month was to be made about the first of the succeeding month, and a valuation according to the current market prices put thereon ; from the amount of such estimate, ten per cent. was to be deducted, and the balance certified as due.

The obligation of Higgins and Sellers binds them with McLane to the city of St. Louis for the faithful performance of the foregoing contracts in every particular. The foregoing quotations from the contracts are believed to be sufficient for an understanding of the legal propositions arising upon this record.

McLane entered upon the work and continued it until the twentieth day of November, 1888, when he absconded from the state, leaving the work in an unfinished condition. It is conceded that, up to the first day of November, the city had paid to McLane, for work done and materials furnished under contract, numbered 2071, the sum of thirteen hundred dollars and fifty

cents. This would leave the sum of seventeen hundred and ninety-six dollars and fifty cents due from the city upon the completion of the work. The work under contract, numbered 2083, was also left in an unfinished condition. Monthly estimates of the work under this contract had also been made, and, up to the first day of November, McLane had been paid on account thereof six hundred and seven dollars and fifty cents, leaving a balance due from the city, if the work had been completed, of two hundred and forty-two dollars and fifty cents. The work under the third contract had been fully completed and paid for. It was also admitted that, in addition to the amounts earned by McLane under the two contracts, between the first and twentieth of November, the city owed him the sum of thirty-seven dollars for work done at the House of Refuge, not embraced in either contract.

When McLane abandoned the contracts, the city made an arrangement with Higgins and Sellers to complete the work. No new contract was entered into. The work was to be completed under the old contracts. Higgins and Sellers finished the work to the satisfaction of the city authorities. A few days after this arrangement with Higgins and Sellers, the O'Neil Lumber Company, one of the interpleaders, filed a suit in equity against McLane and the city, in which it claimed that McLane was indebted to it for lumber, furnished on account of said contracts, of the value of seven hundred and fifty dollars, and it asked that this amount be charged against the remainder of the money due from the city under the contracts. Then followed a like suit by John M. and Edward Doyle, the appellants herein, in which they claimed to have performed work and furnished materials to McLane, under contract, numbered 2071, of the value of thirteen hundred and four dollars. They sought to make their claim a charge upon the balance due from the city under said contract, numbered 2071. Other mechanics and materialmen followed with

like suits, but, under the view which we have taken of the case, it will not be necessary to notice them. When Higgins and Sellers completed the work, they claimed that the work done and the materials furnished by them in the completion of contract, numbered 2071, actually cost them the sum of one thousand and fifty-nine dollars and eighty-nine cents ; that they did work in completing contract, numbered 2083, of the value of forty dollars ; and that they did extra work under the last-mentioned contract amounting to twenty-nine dollars and fifty cents, making a total of eleven hundred and twenty-nine dollars and thirty-nine cents. Their contention was, and is now, that, as they had earned this amount in the completion of the work, they were entitled to be first paid out of the balance of the funds due under the McLane contracts, in preference to the O'Neil Lumber Company and Doyle Bros.

When the city found itself beset by these conflicting claims, it brought into court the amount due from it under the McLane contracts, to-wit, twenty-one hundred and five dollars and fifty cents. The foregoing facts were stated in its petition, and the court was asked to compel the claimants to interplead for the fund, and to restrain them from the further prosecution of the suits against the city. The necessary orders were made, and thereafter such proceedings were had in the case, as to result in a trial between the several interpleaders of their respective claims to priority. The court held that Higgins and Sellers must be paid first. This left a balance of nine hundred and seventy-six dollars and eleven cents, which the court found had been earned by McLane between the first and twentieth of November. As the O'Neil Lumber Company was the first to institute suit and have the city served with process, the court gave its claim priority over those of the other interpleaders, and ordered it to be paid in full. The suit of the Doyle Bros., being the next in

point of time, the remainder of the fund, to-wit, the sum of two hundred and twenty-five dollars and sixty-two cents, was ordered to be paid to them. From this order of distribution, Doyle Bros. have prosecuted their appeal.

The contest made by the appellants in the trial court, and which is now urged, is of a twofold character. In the first place, it is insisted that the claim of Higgins and Sellers must yield to the debts of all persons who performed work or furnished materials in aid of the improvements under the two unfinished contracts. *Secondly :* As against the O'Neil Lumber Company it is urged that, as to that portion of its debt which did not grow out of the unfinished contracts, no claim to the fund can be made until the appellants are paid ; that, to this extent, they have superior equities ; that, as to the remainder of the Lumber Company's debt and the appellants' demand, the equities are equal, and should be satisfied *pro rata* out of the fund, notwithstanding the fact that the suit of the O'Neil Lumber Company was prior in point of time to theirs. It may be well to state, in this connection, that it is conceded that the Lumber Company furnished McLane lumber of the value of seven hundred and fifty dollars and fifty-nine cents, of which four hundred and ninety-five dollars' worth was used under the contract, numbered 2071, twenty-two dollars and five cents' worth under contract, numbered 2083, and the remainder under contract, numbered 2076, which had been completed at the time McLane left, and the work thereunder fully paid for. The foregoing are the only questions in the case, and we will dispose of them in the order stated.

I. If the parties, holding claims against McLane for work done or materials furnished, had superior equities to Higgins and Sellers, it must result either from the institution of their suits, or by virtue of the contracts. We must first ascertain what the interpleaders accomplished by bringing their suits. It is

well settled that funds belonging to an absconding debtor cannot be reached in the hands of a municipal corporation by process of garnishment under an attachment. *Pendleton v. Perkins*, 49 Mo. 565. On account of this defect in the legal machinery for the collection of debts, courts of equity assume jurisdiction and undertake to afford creditors that measure of relief, that is accorded to them when the money of their absent debtor is held by an individual. And it is upon this idea that an equitable proceeding of such a character is denominated an equitable attachment or garnishment. *Pickens v. Dorris*, 20 Mo. App. 1; *Lackland v. Garesche*, 56 Mo. 267. What then was the effect of the service of the several writs against the city? It would seem plain that the only effect would be to charge the amount, which was then owing by the city to McLane, with an equitable lien in favor of the respective plaintiffs according to the priority of their suits. This would, undoubtedly, be true, if the proceedings were at law by attachment and garnishment, and we cannot see how it would be different in an equitable proceeding in the nature of an attachment. Under this view, the filing of a creditor's bill by the appellants could not have the effect of reaching or subjecting to the payment of their debt any money not the property of McLane. 3 Pomeroy's Eq. Jur., sec. 1415. The amount earned by Higgins and Sellers cannot be claimed as the property of McLane, and subjected to the suits of persons filing creditor's bills, unless such result can be worked out upon the theory that Higgins and Sellers were in some way bound as sureties to the plaintiffs in the suits. We do not think that there is any provision of the contract, which gives any mechanic or materialman a right of action against the sureties. There being nothing in the contract which created any right or equity in favor of the laborers and materialmen against Higgins and Sellers, it necessarily follows that their equity or right to be first paid, to the extent

of the actual and reasonable cost of the work performed and materials furnished by them, is superior to that of all the other interpleaders. We will, therefore, rule this point against the appellants.

II. We have now reached the question of difference between the appellants and the O'Neil Lumber Company. As previously stated, a portion of the company's claim included lumber furnished under contract, numbered 2076. The work under this contract had been completed by McLane and paid for by the city. Therefore, the argument is made that the Lumber Company cannot have any portion of the fund earned by McLane under the other contracts applied to this portion of its debt; that, to this extent at least, the appellants' equities are superior.

Unless the appellants have some claim to the fund, outside of the lien created by their suit, this argument must fail. If any such prior lien exists, it must grow out of, and depend upon, the contract. We are not aware of any independent equitable rule, which would displace to any extent the lien acquired by the Lumber Company by its suit in favor of the appellants' claim, merely from the fact that they had furnished materials or performed labor. Nor do we know of any such rule, which would place on an equality all claims against McLane for labor performed or materials furnished under the unfinished contract, regardless of the time when the suits were begun. In the case of *Luthey v. Woods*, 6 Mo. App. 67, something was said about such "a supposed equity," but we do not understand that the court in that case committed itself to any such doctrine.

When we look to the contract, we are unable to find any provision which gives any independent equitable lien or claim to the fund in favor of laborers and materialmen. Such right was dependent upon the action of the city, and had to be worked out or asserted, if at all, by the city. If it be conceded that, under a proper construction, the contracts in question

do not differ in their legal effect, in reference to the right of the city to retain sufficient funds to pay materialmen and laborers, from the contracts in *Luthey v. Woods, supra*, and *City v. Keane*, 27 Mo. App. 642, yet the facts are essentially different. In the cases cited, the representatives of the board and the city had exercised the power conferred to set apart, for the benefit of the subcontractors and materialmen, the money due the contractor. This action on the part of these authorities was taken before the plaintiffs instituted their suits; hence the court held that the funds in the hands of the board and the city had been impressed with a trust in favor of the subcontractors and materialmen, and that the action taken by these authorities was, in effect, an equitable assignment of the fund for the benefit of all subcontractors, materialmen and laborers in proportion to the amounts of their respective claims. In the present case we have no such state of facts. It is not pretended that the city authorities in any manner set apart, or attempted to set apart, for the payment of his subcontractors or materialmen, any portion of the money earned by McLane. We, therefore, conclude that the O'Neil Lumber Company was entitled to receive full satisfaction of its entire demand out of the amount due McLane, and that the remainder was properly ordered to be paid to the appellants.

In the appellants' brief, the point is made that there was no attempt at the trial to show the value of the work performed by McLane between the first and the twentieth of November; that this fact was assumed by the trial court by deducting the actual cost of finishing the work from the balance due from the city under the contracts. The appellants seem to be correct in this. It is quite apparent, however, that this was not an issue in the case. It was manifestly conceded, both in the pleadings and during the trial, that the difference between the actual cost of completing the

work and the total balance due under the contracts represented the sum earned by McLane. The case was tried upon the various interpleas, and the issues therein made only put in issue the amount claimed by Higgins and Sellers for finishing the job. There was no intimation that McLane had carried on the work at a loss. This action of the court could only prejudice the other interpleaders in case this was a fact. We think the case was fairly decided, and the judgment will, therefore, be affirmed. Judge ROMBAUER concurs in this opinion. Judge THOMPSON dissents. He is of the opinion that the funds in the hands of the city, belonging to McLane, should have been distributed ratably among all the interpleaders, regardless of the time of the institution of their suits. He also thinks that this opinion, in the distribution of the fund, as indicated by him, is in conflict with the decision of the supreme court in the case of *Rieper v. Rieper*, 79 Mo. 352. The case will, therefore, be certified to the supreme court.

ROMBAUER, P. J. (*concurring*).—There is nothing in the decision rendered which is in any way opposed to the opinion of Mr. Commissioner PHILIPS in *Rieper v. Rieper*, 79 Mo. 352. The ruling in that case, denying the plaintiff any priority, was placed on the ground that she was a mere general creditor, and did not, by the institution of the suit against her husband, acquire a lien on the goods. The proposition thus stated is the converse of the proposition, decided both by the supreme court and this court, that one who institutes a suit against a married woman in equity, to charge her separate estate with the payment of her debt to him, acquires no lien on such separate estate prior to the rendition of the decree. *Davis v. Smith*, 75 Mo. 224; *Boatmen's Saving Bank v. McMenamy*, 35 Mo. 204.

But the maxims, "*vigilantibus et non dormientibus jura subveniunt*," and "*qui prior est tempore, potior est jure*," are as good in equity as at law. That they

are applicable to a case of this character has been intimated in *George v. Williamson*, 26 Mo. 190, and expressly decided in *Jackman v. Robinson*, 64 Mo. 292. The present case is a far stronger one than either of those cases, because, in *Pendleton v. Perkins*, 49 Mo. 565, and subsequent cases, this process is treated as an equitable garnishment.

As the liability of the city to the plaintiffs who file bills can be sustained neither on the theory of trust nor on the theory of equitable assignment, the natural result of the holding of the dissenting judge would be that a creditor of the contractor, by the institution of such a suit, would gain nothing, and the city, like any other debtor, could pay the money to its creditor, the contractor, even after the institution of the suit. Nor can I see, if such were the law, on what theory it could defend a suit brought by its creditor for these very funds.

Whatever views we may entertain as to the propriety of permitting preferences between creditors of an insolvent debtor, the doctrine that such preferences may be gained either by the voluntary act of the debtor or by superior diligence of the creditor, is too firmly established in our jurisprudence to be now disturbed. The understanding of the law by the bench and bar in this state, ever since the ruling in *George v. Williamson*, *supra*, was certainly in conformity with that opinion, and with the foregoing opinion.

THOMPSON, J. (*dissenting*).—I have been asked to state, before the close of the term, the grounds on which I have dissented from the conclusions reached by my brethren in this case. The statute relating to mechanics' liens contains the following section: "The liens for work and labor done, or things furnished, as specified in this article, shall be upon an equal footing, without reference to the date of filing the account or lien; and in all cases where a sale shall be ordered

and the property sold, which may be described in any account or lien, the proceeds arising from such sale, when not sufficient to discharge in full all the liens against the same, without reference to the date of filing the account or lien, shall be paid *pro rata*, on the respective liens: Provided, such account or lien shall have been filed and suit brought as provided by this article." R. S. 1889, sec. 6727; R. S. 1879, sec. 3193.

With this statute in force, the city of St. Louis, in making the contract with McLane, inserted the following provision: "And said party of the first part (which includes the contractor and his sureties) hereby further agrees that he will furnish the said Board of Public Improvements with satisfactory evidence that *all persons, who have done work or furnished materials under this agreement, and are entitled to a lien therefor* under any law of the state of Missouri, have been fully paid or no longer entitled to such lien; and, in case such evidence be not furnished, such amount as the board may consider necessary to meet the lawful claims *of the persons aforesaid*, provided said persons shall notify said board before the final estimates be returned, shall be retained from the moneys due the said party of the first part under this agreement, until the *liabilities aforesaid* may be fully discharged."

With this provision in force, indicating the policy of the state to be that all mechanics and materialmen entitled to liens shall share ratably, the city sees fit to insert this clause in its contract with the mechanic, indicating a clear purpose on its part to see that the policy of the statute is carried out, and that it will withhold enough of what is due to the principal contractor to pay his subcontractors or materialmen. It is true that such persons are not, under the law as judicially construed, entitled to a mechanics' lien against any property belonging to the city; but that does not seem to afford a good reason why no effect whatever should be given to this clause of the contract. The city had

the right, under the decision of *Luthey v. Woods*, 6 Mo. App. 67, and *City of St. Louis v. Keane*, 27 Mo. App. 642, to hold enough of what was due McLane, in the character of trustee for the materialmen who had furnished to him materials which he used in the work. But events took such a turn that there was not enough for all, and the city, finding itself thus embarrassed, instead of executing the trust itself, brought the fund into a court of equity and asked that court to administer it,—in other words, asked that court to require the contending parties to interplead for it, which was done. It is also true that the city has not, under the terms of the contract, elected to set this fund apart and to hold it for any particular beneficiary. But, nevertheless, I cannot but think that it ought to be distributed, not according to the attachment law, but according to the policy of the mechanics' lien law. This clause of the contract has no doubt existed in the contract forms, on which the city lets out contracts for city buildings, from a time when it was supposed that the city buildings were liable to mechanics' liens. Persons supplying materials to city contractors may fairly be presumed to know that such a clause exists in such contracts; they may, therefore, be fairly presumed to give credit to the contractor on the faith of being protected by the city. But this faith is broken, and this just expectation disappointed, when the creditor, that makes the first grab at the fund set apart for all, gets a preference over the others, albeit in a court called a court of equity.

The ground on which this result is reached, if I understand the reasoning, is that this fund has never been impressed with the character of a *trust*, which distinguishes the case from the previous decisions of this court. To my mind it is a conclusive answer to this to say that the city has done all that it could safely do to impress the fund with the character of a trust fund for the equal benefit of the materialmen, and has certainly

not indicated a contrary purpose by handing it over to a court of equity for distribution.

But it is said that the proceedings in equity, which were taken against the city by the materialmen before the petition of interpleader was filed, were "equitable garnishments," and, therefore, the provisions of the attachment law is to be imported into a court of equity, under which, instead of doing equity by making a ratable distribution among the creditors of equal merit, the rule of distribution 'is to be, first come, first served. It is true that, in judicial decisions in this state, the proceeding has been denominated an "equitable garnishment." But that expression was used for the mere convenience of having a name for an anomalous proceeding; it was not used with reference to the question of priorities which we are here considering. To my mind there is no such thing as an "equitable garnishment," in the sense in which it is here sought to employ the term, any more than there is an equitable indictment, or an equitable bill of attainder.

But if we are to disregard the policy of the statute relating to mechanics' liens, and if we are also to disregard the contract between the city and McLane, which shows that both parties had in mind the idea that the materialmen of McLane should share equally, there is another ground which is inexorably logical, as well as undeniably just, on which the same result should be worked out. It is the doctrine of our supreme court in *Rieper v. Rieper*, 79 Mo. 352,—the same being, so far as I can see, the last controlling decision of that court upon this question—in which the familiar rule of equity is applied, that what are called equitable assets are to be divided *pari passu* among all creditors before the court. The same doctrine was stated and applied, by this court in *Heiman v. Fisher*, 11 Mo. App. 275, and in *City of St. Louis v. Keane*, 27 Mo. App. 646.

What, then, are equitable assets? Judge BAKEWELL, in *Heiman v. Fisher*, 11 Mo. App., at page 280,

says that "equitable assets are such as can be reached only by the aid of a court of equity, and the established rule is, that assets which can only be reached in equity must be distributed *pari passu* among all creditors." I take the rule to be that, where assets are of such a character that they are not vendible under an execution at law, and that no lien can be made to attach to them by any proceeding at law, but that they can only be reached and subjected to the demand of a creditor by the aid and the processes of a court of equity, they are, for that reason and that reason alone, equitable assets. Nor does it appear to me to make any difference *why*, or on what theory of law or of public policy, they are held to be available to the creditor through the aid of processes of equity alone. To bring them within the well-known rule in respect of the distribution of equitable assets, it is enough that they cannot be *touched in any way* without aid of a court of equity, and that whatever creditor gets satisfaction out of them must submit himself to the principles of a court whose favorite maxim is that equity is equality.

But to this view there is opposed the argument that, in this state, in the case of what is called a *creditor's bill* in aid of an execution at law to reach assets which have been concealed or fraudulently conveyed by the debtor, the rule is that the creditor first filing such a bill gets a priority over the others. Such is, no doubt, the rule in this state, though the contrary principle is every day administered in the courts of the United States here in our midst. But the assets thus pursued and made available by the creditor are not equitable assets within the sense of the rule under consideration, for the reason that they are vendible under his execution at law. The creditor can levy upon his debtor's interest in property which the latter has fraudulently conveyed, have it sold at sheriff's sale, become the purchaser, and then bring a suit in equity to clear his title ; and I understand that a third person may become

the purchaser at sheriff's sale, and have the like remedy in equity. Rights may thus attach to such assets in proceedings at law, which, in their very nature, give a priority—not merely a priority of *lien*, but a priority of *title*.

But there is another reason which distinguishes those cases from this. In those cases the moving creditor, even where he does not first sell the debtor's interest under his execution at law, often goes to great labor and expense in uncovering assets of his debtor. It is, therefore, debatable, to say the least, whether he ought to be required, after fighting the battle, to allow the camp-followers who have skulked in the rear, to come in and divide with him the fruits of the victory. But no such condition of things exists in respect of the question we are considering. The debtor has made no fraudulent conveyance—has concealed no assets. He has simply run away, leaving visible certain assets in the hands of a custodian which is so privileged, under the policy of the law, that it can only be compelled to account for them and to distribute them by a court of equity. Shall the principle, which rewards the diligence and courage of the judgment creditor who sues to set aside a fraudulent conveyance, be applied so as to give a priority to the creditor seeking satisfaction out of such equitable assets, merely because he may happen to file his bill a day before the others? This is not rewarding diligence, courage, labor and the expenditure of money. It may result merely in rewarding good fortune. The creditor first filing his bill may not even be the most diligent; he may merely be the most fortunate. A day's sickness in the case of his rival creditor, the accident of employing one lawyer instead of another, may, if this is to be the rule, turn the scale and give him all, while the others, standing in equal right, get none.

I can see no difference in principle between this case and the case of *Rieper v. Rieper*, 79 Mo. 352, which was beyond question correctly decided. In both cases the

assets are well known, uncovered, undenied, unconcealed; but capable of being subjected only by proceedings in equity. The moving creditor, who, as in *Rieper v. Rieper*, seeks to subject the separate estate of a married woman, gets no lien by the mere filing of his bill, and for the naked reason that the assets are equitable assets, and that it is the act of the court, and not the act of the creditor, that creates the lien. The lien is created by the *decree* and not by the bringing of the suit. In all such cases the well-known rule of chancery procedure is that all creditors, who come in before the final decree of distribution, share *pari passu*.

Aside from the bald injustice which results from the view taken by my associates, there are, to my mind, strong reasons why the provisions of the attachment law, under which we have seen here in St. Louis the spectacle of different deputies of the same sheriff driving fast horses at full speed to see which shall first get to a certain place to levy an attachment upon the stock of goods of a failing debtor, should not be imported into the proceedings of courts which are called courts of conscience.

I agree, however, with the view of my associates that these materialmen are not entitled to anything that was earned by Higgins and Sellers in carrying out the contract of McLane, because, although they are included by the terms of the clause of the contract above quoted in the designation of "parties of the first part," yet I do not see that they were sureties for the creditors of McLane other than the city.