MARGARET HENSON, Respondent, v. KEET & ROUN-
  TREE MERCANTILE COMPANY; THE SPRINGFIELD
  GROCER COMPANY AND J. ROTHSCHILD & CO.,
  Appellants.

St. Louis Court of Appeals, February 16, 1892.

1.  Husband and Wife: DEALINGS WITH WIFE'S PROPERTY.  A stock
    of merchandise was purchased by a married woman, who paid the
    greater part of the purchase money out of her own means.  With-
    out her consent her husband carried on business in his own name
    with the stock thus purchased, and thereafter mortgaged the entire
    stock then on hand to secure a debt contracted by him for the pur-
    chase of goods.  Held, that, under these facts, the mortgage did
    not bind goods identified as a part of the stock at the time of her
    purchase thereof.

2.  ———: ———.  Held, further, arguendo, that, in the absence of
    proof to the contrary, the payment of a part of said purchase
    money by the husband out of his own means should be treated as a
    gift from him to his wife.

3.  Principal and Agent: CHATTEL MORTGAGE BY AGENT.  One, who
    is the general agent to conduct a retail store for another, has no
    implied authority to make a transfer the effect of which is to close
    the business, such as a chattel mortgage of the stock; and such a
    chattel mortgage will not bind the principal, even when authorized
    by him, if the agent, in giving it, professes and undertakes to act
    on his own behalf and not for the principal.

*Appeal from the Greene Circuit Court.*—HON. O. H.
TRAVERS, Judge.

AFFIRMED.

*Sebree & Tatlow*, for appellants.

*Silsby & Buckley*, for respondent.

BIGGS, J.—This is a controversy between the plaintiff, who is the divorced wife of William Henson, and the defendants concerning a stock of dry goods. The present action is replevin, in which the plaintiff claimed to be the owner of the goods and entitled to their possession. The suit was without bond, and consequently there was no delivery order. The defendants were in possession of the property under a chattel mortgage, given by William Henson to secure certain debts contracted by him for goods purchased from the defendants. The answer was a general denial. The case was submitted to the court without the aid of a jury, and the court found for the plaintiff as to a portion of the stock, and assessed its value at $625. A judgment for the assessed value was entered, the defendants having disposed of the goods during the pendency of the suit. From that judgment the defendants have appealed, and they have assigned for error: *First.* That there is no evidence to support the judgment; *second*, that the finding is against the weight of the evidence ; *third*, that the court excluded competent evidence offered by the defendants.

It is useless for us to cite authorities in support of the proposition, that an appellate court cannot review a case on the mere weight of evidence. Therefore, that assignment may be put aside. The third assignment concerning the court's action in the rejection of evidence may be properly disposed of in our discussion of the first assignment, which presents the real question in the case.

As the first assignment challenges the sufficiency of the plaintiff's evidence, a somewhat detailed statement of it ought to be made. We have read the record in this case with care, and we are of the opinion that the plaintiff's evidence, when taken together and read as a whole, tends to prove the following facts : That in June, 1889, James Butcher ( the brother of the plaintiff) and Mrs. Caroline Robinson ( the wife of S. B. Robinson, were conducting a dry-goods store in the town of Burkley, in Greene county ; that the Hensons and Robinsons, wishing to engage in the mercantile business, opened negotiations with Butcher, which resulted in the sale of the goods to the plaintiff and her sister for the sum of $2,400 ; that, when the invoice was completed, the plaintiff in part satisfaction of her part of the purchase money paid to Butcher $877, which amount she had inherited from her father, who died in 1888 ; that afterwards Butcher turned over the keys of the storeroom to Henson and Robinson, and they, without consulting anyone, decided that they would conduct the business in their own names, although the goods had been purchased by their wives and paid for by them, except the sum of $650 ; that afterwards Henson and Robinson gave their note for this balance of the purchase money and also a chattel mortgage on the goods to secure it, and this note was afterwards taken out in trade at the store ; that, some time in November following, Henson paid Butcher $300 on account of the purchase, but whether this was applied on the note of Robinson and Henson, or was used in making up some deficiency as to Mrs. Robinson's interest, cannot be ascertained with certainty from the printed abstract furnished us ; that the business was conducted in the names of Henson and Robinson until March, 1890, at which time the parties divided the stock ; that shortly thereafter the Hensons removed the portion of the goods assigned to them to Springfield, and the business was there conducted for a few months by Henson and apparently in his own name ; that after

coming to Springfield, he purchased goods from the defendants in his own name, and that, without the plaintiff's knowledge or consent so to do, he executed the chattel mortgage on the entire stock to secure the debts thus contracted. It was admitted on the trial that the goods taken by the defendants were worth $1,400, and that the portion recovered by the plaintiff was a part of the identical goods originally purchased from Butcher, and that the goods recovered were of the value of $625.

Was this testimony sufficient to authorize the judgment? We will notice the points presented by defendants on the negative side of the question. In the first place we cannot agree that, when the entire evidence is considered, the conclusion must necessarily follow that the original purchase from Butcher was made by Henson and Robinson for their individual benefit, and not for that of their wives. It is true that the evidence shows (as it would show in most cases where a husband was acting for the wife) that, in making the trade and taking the invoice, Henson and Robinson were the chief actors. But Butcher and the plaintiff both testified (and they were the only witnesses who testified on the subject) that the plaintiff and Mrs. Robinson were consulted about the purchase; that it was well understood that Henson and Robinson had no money, and that, if the goods were bought, they would have to be paid for with money coming to their wives from their fathers' estates ; that the purchase was after-wards consummated in the names of the plaintiff and Mrs. Robinson, and three-fourths of the purchase money was paid by them. Butcher further testified that, after the invoice was made and after the goods had been paid for, save the balance of $650, Henson and Robinson concluded that they did not wish to do business in the names of their wives, and that, without consulting the plaintiff, or anyone else, announced to Butcher that they would carry on the store in their

individual names, which they did. The fact that the business was conducted in Henson's name, and that he afterwards put into the concern $300, does not necessarily prove that he was the real purchaser, especially when the evidence shows that the plaintiff was not consulted about the manner of conducting the business, and had no knowledge that her husband had put, or intended to put, any of his money into the concern, or that he and Robinson had mortgaged the goods for the balance of the purchase money.

In opposition to this it is urged that the above facts are identical with those in the case of *Rieper v. Rieper*, 79 Mo. 353, wherein it was held that Mrs. Rieper must be treated as an ordinary creditor of her husband, it appearing that he had used some of her separate estate or money in paying for a stock of goods. An examination of that case will show a state of facts quite different from what we have here. Rieper, the husband, bought the stock from one Klebba. His wife had nothing to do with the purchase. He paid $3,600 for it. His wife had deposited with one Wehrman for safe-keeping $900, which belonged to her at the date of her marriage. Wehrman, without her knowledge or consent, gave the money to Rieper, and he used it in paying for the goods bought of Klebba. Some time afterwards, Mrs. Rieper brought suit against her husband setting up these facts, and praying for a sale of her husband's stock of goods, and that she be reimbursed out of the proceeds. Other creditors of Rieper intervened. The court held in a contest between them and Mrs. Rieper that, under the facts, she could only be treated as an ordinary creditor of her husband, and that she must share with the other creditors *pro rata*, for the reason that the original goods which her money partly purchased had been so intermingled with the mass of her husband's property thereafter acquired, that the right to follow any portion of it specifically was

no longer feasible. It will be observed that Mrs. Rieper did not claim to own the goods or any portion of them, but she sought to be fully reimbursed, as against other creditors of the husband, because Wehrman and her husband had been guilty of a breach of trust. In the case at bar the plaintiff proved that the identical property recovered was a part of the goods originally purchased by her from Butcher, and she claimed, and the court so held, and we think properly so, that she could not be divested of the title to her property by any act of her husband. *Cooper v. Standley*, 40 Mo. App. 145; *Rodgers v. Bank*, 69 Mo. 560; *Gilliland v. Gilliland*, 96 Mo. 522.

Again it is urged that, if it be conceded that the original purchase was made by the plaintiff, the subsequent investment of the $300 by her husband constituted them partners, and that, as it is the law of this state that one partner may by virtue of his implied authority as such make a valid mortgage of the partnership personalty to secure a partnership indebtedness (*Keck v. Fisher*, 58 Mo. 532), the judgment cannot be upheld. The vice of this argument is that there is no evidence of a partnership agreement. A partnership contract, like any other contract, must be the result of an agreement either express or implied. There is nothing in the record to show that the plaintiff ever recognized her husband as her partner, or that he ever claimed that she was his partner, or that he ever pretended to act as such. So far as the payment by Henson is concerned, the record shows that it was voluntarily made on his part, and without the knowledge of his wife. In the absence of proof to the contrary the payment must be treated as a gift, and not as evidence of a contract of copartnership. *Gilliland v. Gilliland, supra.*

It is next insisted that the defendant's title under the chattel mortgage ought to prevail on the ground of agency. Henson was undoubtedly the general agent of his wife, and, as such, had authority to bind her in the

usual and ordinary transactions pertaining to the business. But the implied powers of a general agent employed to conduct a retail establishment would not authorize an act, which in its effect would be equivalent to a destruction or the closing up of his principal's business, such as a sale in bulk of the entire property, or directly pledging it as security for his principal's debts. But, even though the authority of Henson to make the mortgage be conceded, he did not bind his wife because he did not profess to act for her. *Rodgers v. Bank, supra; Stackpole v. Arnold,* 11 Mass. 27.

The last proposition discussed by the defendants is that of estoppel. It is with reference to this question that they complain of the action of the court concerning the exclusion of evidence. For the purpose, as we assume, of concluding the plaintiff by way of estoppel, the defendants' attorney asked one of his clients the following: "*Q.* Did you at the time of selling this bill of goods, or of dealing with the firm of Henson & Robinson, have any knowledge that Mrs. Henson had any interest in it?" The question was objected to, and the objection sustained. This is all the record shows. For aught that appears the witness *did know* that Mrs. Henson was the owner of the store. But a favorable answer to the question would not have been sufficient of itself to establish an estoppel. There are three things requisite to every estoppel : "*First.* Fraudulent representations or withholding the truth when it is one's duty to speak ; *second,* reliance on the truth of such representations ; *third,* the consequent act by the defrauded party to his disadvantage." It will be thus seen that the defendants are in no position to have this question reviewed on its merits.

Finding no error in the record, the judgment of the circuit court will be affirmed, all the judges concurring, it is so ordered,