MORRIS *v.* FLETCHER.

MORRIS *v.* GATES.

Opinion delivered October 21, 1899.

1. FRAUDULENT CONVEYANCE—DEED BY HUSBAND TO WIFE.—Where a husband, owning the reversionary estate in lands of which his wife owned a life estate, conveyed his interest to her, thereby depriving himself of the means of paying his debts, his conveyance is a fraud upon the rights of his creditors. (Page 110.)

2. SAME—HUSBAND IMPROVING WIFE'S PROPERTY.—Where a husband of his own money expended a large sum in making permanent improvements upon his wife's land, whereby he denuded himself of the means of paying his debts, the money so expended will be treated as a charge upon the lands for debts existing at the time such improvements were made. (Page 110.)

Appeal from Lonoke Chancery Court.

THOMAS B. MARTIN, Chancellor.

*Williams & Bradshaw,* and *Jno. C. England,* of St. Louis, Mo., for appellants.

Since High was under a legal obligation to convey the lands to his wife, no other consideration was required. 40 Ohio St. 400; 66 Ia. 422; 92 Ga. 485. If he mingled his own property with the trust property in such a manner that it could not be separated, he was bound to account for it all to the *cestui que trust,* his wife. 104 U. S. 54; 83 Mo. 210, 216; 53 Ark. 545, 558; 47 Ark. 533. High having failed to carry out his part of the agreement, his heirs cannot rescind, in the

face of his default.   6 Rich. Eq. (S. C.) 324; 19 C. B., N. S. 393; 4 Barb. 614; 2 Cal. 138; 80 Ia. 194; 31 Neb. 678.   It is not enough, to justify the overthrow of the conveyance, that the creditors show it was merely voluntary.   Circumstances of actual fraud must be shown.   50 Ark. 42; 74 Mo. App. 419; 95 Pa. St. 69.   Mrs. High was not estopped to take and hold the lands as against the creditors of Capt. High.   58 Ark. 20; 119 Mo. 615; 128 Mo. 85; 137 Mo. 369; 34 N. J. Eq. 158; 2 Stockt. 344; 32 Ill. App. 183; 39 Fla. 111.   High's action in improving his wife's property was not a fraud upon his creditors, and the value so added can not be reached by them.   33 Vt. 457; 78 Ill. 94; 34 N. Y. 493; 44 N. Y. 343; 50 Ill, 481; 5 Sneed, 39.   The recitals in the deed bind appellees.   Jones, Ev. § 283; 58 Ga. 178; 88 Ill. 427; 97 Pa. St. 342; 44 N. Y. 50; 43 Pac. 294; 48 Ark. 258.

*Trimble*, and *Rose, Hemingway & Rose*, for appellees.

The agreement to execute the will was the consideration for the deed of High; and this agreement should be enforced. 2 Vern. 48; 3 Ves. 412; 19 Ves. 67; *ib.* 63; 7 Sim. 644; S. C. 8 Eng. Ch. Rep. 643; 3 Beav. 469; 12 C. & F. 45; 8 Jur. (N. S.) 607; 11 Jur. (N. S.) 475; 3 Dess. 194; 72 Mich. 76; S. C. 40 N. W. 173; 2 Stockt. Ch. 332; S. C. 66 Am. Dec. 773; 5 Am. L. Reg. 177; 13 N. J. Eq. 246; 13 N. E. 10; S. C. 145 Mass. 69; 41 N. W. 515; 41 N. Y. 480; 26 N. E. 1024; S. C. 124 N. Y. 423; 48 N. W. 450; 30 Mo. 389; 47 Mo. 37; 12 Pa. St. 27; 5 Bush, 625; 6 Bush, 245; 11 Bush, 142; 3 Bush, 35; 31 Mich. 247; 4 Stockt. Ch. 371; 29 Md. 58; 20 Ind. 223; 9 N. Y. Supp. 114; 3 Cliff. 169; 1 Roper, Leg. 766; 17 Atl. 995; S. C. 127 Pa. St. 341; 20 Atl. 579; S. C. 137 Pa. St. 35; 17 S. W. 742; 15 N. E. 345; 114 Ind. 311; 4 S. E. 621; 8 Atl. 300; 49 N. J. L. 274; 2 So. 624; 3 Pars. Cont. 406; 2 Story, Eq. 785; Poll. Cont. 308. Appellees are not estopped by the deed because:   (1) An estoppel by deed must be pleaded to be available.   8 Am. & Eng. Enc. Pl. & Pr. 9; 12 Ark. 769.   (2.) The recital of consideration in a deed never works estoppel.   The true consideration may be shown.   55 Ark. 112; 62 *id.* 330; 54 *id.* 195.

Mrs. High having known of and acquiesced in her husband's expenditures on her land cannot now resist the claim for them. 2 Perry, Tr. § 850. Since the deed comes into this case only collaterally, as evidence, its recitals are not estoppels. 101 U. S. 240, 247; Herm. Estop. § 238; 41 N. Y. 345; 19 Barb. 484, 488; 2 Dev. Deeds, § 292 n. 1; 8 M. & W. 213; 19 Ark. 319. The conveyance was fraudulent and void as to creditors. 62 Ark. 32; 50 Ark. 46; 60 Ark. 461. The presumption is that the property was bought with the husband's money. 46 Ark. 542; 94 U. S. 580. The evidence, to establish a constructive trust, such as appellant contends for in favor of Mrs. High in the lands standing in her husband's name, must be clear and convincing. 44 Ark. 365, 370; 29 Ark. 612; Perry, Tr. § 137; 1 N. Y. Ch. (L. C. P. Ed.) 340.

BATTLE, J. The first-mentioned action was instituted by the administrator and heirs of W. T. High, deceased, against the administrator and heirs of Lizzie J. High, to set aside a deed of conveyance of certain lands, which was executed to Lizzie J. by W. T. High in his lifetime. The grounds of the action, as set forth in the complaint, are that W. T. High, being the owner of the lands mentioned, conveyed them to Lizzie J. on the 19th day of February, 1887, she then being his wife; that High and his wife each had children by former marriages; that the consideration of the deed was the promise of Mrs. High to execute a last will and testament, and thereby devise the lands which were conveyed to her to the children of both of them, by existing and previous marriages, equally, share alike; that, having acquired the lands, she refused to execute the will, as she promised, but departed this life intestate, leaving the defendants, Lilly Morris, Lula Hicks and John Hicks, as her sole heirs at law; and that a large number of claims have been probated against the estate of W. T. High, and there are no assets in the hands of his administrator with which to pay them.

The last-mentioned action was commenced by certain creditors of W. T. High, deceased, against the administrator and heirs of Lizzie J. High. The plaintiffs alleged in their com-

plaint that W. T. High departed this life on the 17th of February, 1887, largely indebted to them; that letters of administration had been issued to W. P. Fletcher; that his estate is wholly insolvent, and his administrator had in his hands no assets to pay his debts; that they had probated claims against his estate as follows: Daniel & Strauss for the sum of $169.45, Sanders for the sum of $216.79, Eagle for $179.34, and T. H. Knodel for $922.30; that these debts or claims are wholly unpaid; that, on the 19th day of January, 1887, at a time when he owed all of said debts, and was the owner of certain lands of great value, W. T. High conveyed them to his wife, Lizzie J., thereby denuding himself of all means of paying his debts, and leaving himself utterly insolvent; that the conveyance was entirely voluntary, and a fraud upon their rights; and that the defendants are the heirs and administrator of Lizzie J. High, deceased; and prayed that the deed be set aside, and the lands thereby conveyed be subjected to the payment of the debts which W. T. High owed to them.

The plaintiffs in both these actions asked the court to set aside the same conveyance; being in controversy, and no other.

The defendants in each case answered and denied that W. T. High was ever the owner of the lands described in the complaints; and alleged that all these lands belonged to Isaac C. Hicks, who departed this life leaving Lizzie J. Hicks, his widow; that they were regularly set apart to his widow by a court of competent jurisdiction as dower; that, the estate of Hicks being insolvent, the reversionary interest in them was sold to pay debts; and at this sale, W. T. High, who had previously intermarried with Lizzie J. Hicks, became the purchaser of the same, for and in her behalf, and paid therefor with her "funds," and without her knowledge and consent took the deed therefor in his own name; and that, on the 19th day of January, 1887, W. T. High, at the request of his wife, conveyed to her the reversionary interest in these lands, thereby vesting in her the legal and equitable title to the same.

The allegations of plaintiffs in the complaint in the last-mentioned action as to the indebtedness of W. T. High to each

of them, as to the probate and allowance of their claims
against his estate and the non-payment thereof, as to the ex-
istence of this indebtedness on the 19th of January, 1887,
when he executed the deed of conveyance to his wife, and as
to the effect of the deed in denuding him of the means to pay
his debts and leaving him insolvent, are wholly undenied.

In the first action the circuit court, sitting in chancery,
found the consideration of the deed which was executed by W.
T. High on the 19th of January, 1887, was the promise of his
wife, Lizzie J., to execute a will and thereby devise the lands
in controversy equally to the children of each; and decreed
that the promise to make a will be enforced by vesting in the
children the interest they would have taken had the will been
executed, that is, by vesting in each of them one undivided
twelfth part of the lands, there being twelve children.

In the last-mentioned case the court found, that the deed
executed by High to his wife on the 19th of January, 1887,
was voluntary and a fraud upon the rights of the plaintiffs, and
set it aside as to them and all other creditors whose claims ex-
isted at the time it was executed, and have been legally pro-
bated; and decreed that, "unless the defendants within six
months * * pay to plaintiffs the amounts of their respec-
tive claims, * * * with accrued interest thereon," and
costs of this action, "the said lands will be turned over to the
probate court of Lonoke county to be disposed of in the regu-
lar administration as the assets of the estate of said W. T.
High, deceased, for the payment of said debts due from said
estate."

The defendants in both actions appealed to this court.

The finding of the court in the first action that the con-
sideration of the deed executed by High to his wife on the
19th of January, 1887, was a promise of the wife to make a
will is entirely unsupported by the evidence. The considera-
tion is stated in the deed, but no promise to make a will is
recited as any part of such consideration. On the contrary,
the recitals tend to refute allegations to that effect. No will
was demanded as a condition of the delivery of the deed. Mrs.
High testified that in 1886, when she was in bad health, and

was not expected to live long, her husband requested her to make a will, and both of them for a while believed that they would, but afterwards abandoned it; and that a promise to make a will was no part of the consideration of the deed. The evidence clearly shows that the making of wills was considered and discussed by them, but does not show that the deed was, wholly or in part, based upon any such consideration.

High remained in possession of the lands in controversy about eleven years before he executed the deed, and in that time made valuable improvements upon them. If they had been the separate property of his wife, and belonged to her in fee, and he was insolvent at the time, money expended by him in the permanent improvement of the same, though expended without a fraudulent intent in fact, could have been treated by his creditors as a charge upon the lands for debts existing when the improvements were made. Materials furnished by a husband and used for such purposes, under such circumstances, with the knowledge and consent of his wife, are regarded as a gift in fraud of his creditors. As in other cases, he must be just before he is generous; and he cannot defeat his creditors in the collection of his debts by placing his property in the name of his wife in the guise of improvements upon her estate. It is said: "When the debtor with his family lives on the property of his wife, he may keep it in repair and habitable. Within reasonable limits this may be regarded as a necessary and proper means of performing his obligation to support his wife and family. But whenever the expenditures are beyond what is absolutely necessary and proper for the shelter and maintenance of the family, they may be reached by his creditors. What amounts to an excessive expenditure is difficult to determine, and depends upon the peculiar circumstances of each case. If he puts improvements upon her real estate which are temporary in their character, and primarily calculated to promote his use and enjoyment of the premises as tenant for life, her estate cannot be charged with the value of the temporary improvements." But under no circumstances can the husband's creditors make the wife's separate estate liable for mere labor performed by him. *Nance* v. *Nance*, 84 Ala. 375; *Humphrey* v. *Spencer*, 14 S. E.

Rep. (W. Va.) 410; *Lynde* v. *McGregor*, 95 Mass. 182; *Kirby* v. *Burns*, 45 Mo. 234; Bump, Fraudulent Conveyances (4 Ed.), § 218.

There is still another rule which governs the rights of the husband's creditors in respect to the wife's property, and it is this: A wife who gives her husband unlimited control of her property, and permits him to hold the title in his own name and use it as his own for a series of years, is not, in case of his insolvency, permitted to shield it from the just claims of persons who, in good faith, have given the husband credit, in reliance upon his ownership. "In such a case a conveyance by the husband to the wife is fraudulent and void as to creditors." *Driggs* v. *Norwood*, 50 Ark. 46; *George Taylor Com. Co.* v. *Bell*, 62 Ark. 32; *Stull* v. *Graham*, 60 Ark. 461.

Tested by the rules we have stated, was the deed which was executed by High to his wife void as to his creditors? The lands described in it, except forty acres, were set apart to Mrs. High as dower in the lands of Isaac C. Hicks, deceased, her former husband. The reversionary interest in the same was conveyed by the administrator of Hicks to Mr. High. The forty acres were purchased at private sale, and were conveyed to W. T. High by the vendor. High took control of all the lands. At the time he took possession, all of them, except ten acres, were wild and unimproved. He held possession and controlled them, ostensibly as his own, for about eleven years. He sold all his real estate, and expended $7,000 or $8,000 of his own money in improving them. He caused to be cleared and put in cultivation about two hundred acres of the land assigned to his wife as dower and in controversy, and erected houses and other improvements on the same, which, with the clearing and preparing for cultivation, was of the reasonable value of $8,000. In selling his real estate to improve them, he deprived himself of all means to pay his debts except the property improved. Still he contracted debts. After he had sold all his real estate, and expended large sums of money in improving them, he conveyed the lands to his wife, and completely deprived himself of the ability to pay his debts. At this time he was indebted to the plaintiffs in the second action. In contract-

ing debts with him, or giving him time to pay them, they certainly relied upon the property held by him in his own name, which he improved and made valuable by his materials, for the payment of his debts. Without any other means to earn money, as he was, they could not expect him to pay his debts when he had no property. Tested by the rules we have stated, the conveyance was obviously fraudulent and void as to them.

The decree in the first action is reversed, and the cause is remanded, with instructions to the court to dismiss the complaint; and in the other it is affirmed.