BURNHAM, MUNGER & CO., Appellants, v. WILLIAM F. SMITH et al., Appellants.

Kansas City Court of Appeals, December 4, 1899.

1. **Creditor's Bill: JUDGMENT CREDITOR: GENERAL CREDITOR.** A court of equity is not ordinarily the forum for litigating disputed claims, and a creditor must reduce his claim to a judgment before appeal to a court of equity to enforce its collection.

2. ——: ——: ——. But where the debtors are insolvent and their only property consists of an equity of redemption of certain chattels in the hands of a mortgagee which can not be reached by attachment, execution or garnishment, and the creditor's claim is in effect undisputed, a court of equity will entertain a creditor's bill to subject the surplus in the mortgagee's hands to the payment of a debt on equitable principles.

3. **Lis Pendens: PERSONALTY.** The doctrine of *lis pendens* applies to personalty except negotiable paper and ordinary articles of commerce.

4. ———: **BASIS OF DOCTRINE: COMMON LAW: COMMENCEMENT.** In some cases the doctrine of *lis pendens* is based upon the theory of notice, but it eally rests upon public policy, preventing the alienation of the property to the prejudice of the parties pending the litigation, and the common law gives effect to the doctrine from the service of the subpoena.

5. **Creditor's Bill: LIS PENDENS: LIEN.** The filing of a creditor's bill creates no lien on the debtor's equitable assets by reason of the *lis pendens*.

6. **Lis Pendens: EFFECT OF THE DOCTRINE: PUBLIC POLICY: PARTY.** The sole object of *lis pendens* is to keep the subject of controversy within the power of the court until the decree is entered so as to give effect to the decree and bind an alienee though not a party.

7. **Creditor's Bill: LIS PENDENS: MORTGAGE: GENERAL CREDITORS: MARSHALING ASSETS.** A mortgage delivered after service of subpoena in a creditor's bill is ineffective to change the grantor's interest in the property which is the subject of the suit; and the grantees in such mortgage are no more than general creditors and on a marshaling of the assets take *pari passu* with the other general creditors.

8. **Sales: FRAUD: AFFIRMING CONTRACT: WAIVER: DEBTOR AND CREDITOR.** Though a sale be voidable by reason of the fraud of the vendee, the vendor by affirming the contract and taking security for the purchase money waives all his rights growing out of the fraud and becomes a simple contract creditor.

Appeal from the Nodaway Circuit Court.—*Hon. C. A. Anthony,* Judge.

AFFIRMED.

*Ira K. Alderman* and *Ben J. Phillip* for appellants.

(1)  It appears upon the face of the petition that the plaintiffs (assuming that they have any claim) are simple contract creditors of Saunders & Butcher. They must under the general rule reduce their claim to judgment before they can

seek relief in a court of equity. Crim v. Walker, 79 Mo. 335; Turner v. Adams, 46 Mo. 95; Martin v. Michael, 23 Mo. 50. "The object is, in the first place, by judgment, to reduce the creditor's claim to a certainty—to show that he is in fact a creditor, unless the party shows that he has no concern with his debtor's supposed frauds." Merry v. Fremon, 44 Mo. 518-520; Mullen v. Hewitt, 103 Mo. 639, 650; Thias v. Siener, 103 Mo. 314, 323; Spitz v. Kerfoot, 42 Mo. App. 77; Wait, Fraud. Con. and Cred. Bills, sec. 73 and cases cited; Poulsen v. Van Steenbergh, 65 How. Pr. (N. Y.) 342. (2) Courts of equity are not tribunals for the collection of ordinary demands. Webster v. Clark, 25 Me. 314. (3) To the general rule above stated there is, upon principle, four exceptions: (a) A judgment may be dispensed with from necessity, where it is impossible to obtain one on account of the absence or non-residence of the debtor. Webb v. Lumber Co., 68 Mo. App. 546; Pendleton v. Perkins, 49 Mo. 565; Bank v. Paine, 13 R. I. 592. (b) Where the debtor is dead, for the assets of the estate are trust funds. Grosvenor v. Austin, 6 Ohio 112; Nieters v. Brockman, 11 Mo. App. 600; Martin v. Wagenor, 33 S. C. 487. (c) Where the fund to be reached is a trust fund for the benefit of all creditors, as the assets of an insolvent corporation or limited partnership. White v. Land Co., 49 Mo. App. 450; Batchelder v. Altheimer, 10 Mo. App. 181. (d) Where the creditor seeks to enforce a lien which he holds. (4) The case at bar does not fall within any of these exceptions. There is one case decided by the St. Louis Court of Appeals which apparently sustains the ruling of the lower court on this point. Luthy v. Woods, 1 Mo. App. 167. That case is not sustained upon principle or authority and has been repudiated in later cases. Hayden, J., in an able opinion, has demonstrated the fallacy of that opinion so that no further argument is required. Kent v. Curtis, 4 Mo. App. 121; Luthy v. Woods, 6 Mo. App. 67; Wait on Fraud. Conv. and Cred. Bills [3 Ed.], sec. 73, p.

145.   (5)   The fund in controversy being equitable assets, whatever may be the law in other states it has been recently settled here that the filing of a creditors' bill and the service of process does not create a lien thereon.   "The moving creditor gets no lien by the mere filing of his bill, and for the naked reason that the assets are equitable assets and that it is the act of the court and not the act of the creditor that creates the lien.   The lien is created by the decree, and not by the bringing. of the suit."   St. Louis v. Lumber Co., 114 Mo. 74; Rieper v. Rieper, 79 Mo. 352.   If the bringing of the suit created no lien, Saunders & Butcher had the right to mortgage the property to secure appellants' debts, and their mortgage·having once attached could not be affected by any lien subsequently created.   While it is true the rule is that equitable assets are to be distributed *pari passu* among all the creditors before the court yet it must be remembered that the rule means all creditors similarly situated, or in the same class.

*Karnes, New & Krauthoff, E. A. Vinsonhaler* and *A. F. Smith* for respondents.

(1)   A court of equity has jurisdiction in this case.   It is admitted that if plaintiffs had reduced their claim to judgment, their action would be maintainable; but it is contended by the defendants' creditors that inasmuch as their claim is not in judgment, they have no standing in this court.   This contention is unsound.   It is not an invariable rule that a creditors' bill will only lie on an adjudicated claim.   Luthy v. Woods, 1 Mo. App. 167; Savings Ass'n v. Kellogg, 52 Mo. 583.   The mere bringing of a suit under such a state of facts would have been idle, vain and fruitless.   Trustees v. Nicholl, 3 Johns. 566, 598; Dodd v. Levy, 10 Mo. App. 121, 123, 124; Furlong v. Thomssen, 19 Mo. App. 364, 367, without comment; Kein v. School District, 42 Mo. App. 460, 462; White v. Land Co., 49 Mo. App. 450, 466; Fahy v. Gordon, 133 Mo.

Burnham, Munger & Co. v. Smith.

414, 427; Humphreys v. Milling Co., 98 Mo. 542, 551; Edwards v. Rosenheim, 74 Mo. App. 621, 625; Guerney v. Moore, 131 Mo. 650, 666; Carp v. Chipley, 73 Mo. App. 22, 32, 33. (2) It is immaterial to the plaintiffs whether they procure a lien by the filing of their bill or whether they procure a lien when the court renders a final decree. If they have a right to bring their action—if the court of equity acquires jurisdiction—then the property is in the control of the court, and the plaintiffs are content to let it remain there until the court makes such disposition thereof as equity demands. (3) For the reasons above stated, we believe the court has jurisdiction in this case. If the court has jurisdiction, then the plaintiffs are entitled to the whole of the fund in the hands of Smith, trustee, first, because it is their property which made the fund; and second, because the defendant creditors have elected to contest the plaintiffs' right of action, and they can not share in the proceeds. They have selected their own course of procedure. They have put all possible obstacles in the way of the plaintiffs' recovery, and they are estopped to claim the fruits of the plaintiffs' labors. Valentine v. Decker, 43 Mo. 583; Glass Co. v. Baldwin, 27 Mo. App. 44, 52; Stoller v. Coates, 88 Mo. 514, 521; Fox v. Windes, 127 Mo. 502, 511, 512.

SMITH, P. J.—This is a suit in equity, the material facts of which may be grouped in about this way: The plaintiffs were an incorporated company of wholesale merchants and the defendants, Saunders & Butcher were retailers who were, at the date of the commencement of this suit, indebted to plaintiffs in the sum of $1,374.43 for goods sold and delivered by them to the defendants; that on June 1, 1898, the said Saunders & Butcher executed a deed of trust to the defendant Smith as trustee upon their stock of goods, fixtures, etc., to secure a debt due the Maryville National Bank for $1,600, in which it was conditioned that if the said debt was not paid at

7 o'clock a. m. June 2, 1898, the said trustee should have power to sell; that the said deed of trust was duly recorded and the trustee took possession thereunder; that the value of the said stock of goods exceeded the amount of said bank debt by upwards of one thousand dollars; that the said Saunders & Butcher were also indebted to the defendant, Hundley-Frazer Dry Goods Company—a mercantile corporation—in the sum of $437.34 and to defendant August in the sum of $1,838.34 for goods sold and delivered by the latter to the former.

The petition in this case was filed and the process issued thereon was served on the defendants on the third day of June, 1898; that on the last named day and year the said Saunders & Butcher executed to said Smith, as trustee, a second deed of trust on said stock of goods to secure the debts of the defendant Hundley-Frazer Dry Goods Company and August, but which was not delivered until after the filing of the plaintiffs' petition and the service of the process issued thereon. It is true that the evidence was conflicting as to this last stated fact but the trial court found it to be as we have stated and we shall defer to that finding; that Saunders & Butcher were wholly insolvent and had no property, nor any interest in any, other than that covered by said deeds of trust.

The petition is in the nature of a creditors bill in which all of the parties mentioned in said deeds of trust were made parties defendant. The prayer was for an accounting by Smith, as trustee, etc. etc., for such other relief as in equity and good conscience to the court should seem meet. The court by its decree declared that the only property available for the payment of the plaintiffs' debt was the surplus in the hands of the trustee under the bank's deed of trust, amounting to $1097.80 which was declared equitable assets and ordered to be disturbed *pro rata* among all the creditors hereinbefore named except the bank. From this decree both plaintiffs and defendants appealed.

The defendants in the court below unsuccessfully demurred to the plaintiffs' petition on the ground that it did not

state facts sufficient to constitute a cause of action, in that it appeared from the allegations thereof that the plaintiffs were simple contract creditors of Saunders & Butcher. The question thus raised by defendants is again urged here. It is conceded that the plaintiffs had not reduced their claim to judgment. The general rule is that this must be done before a claimant can successfully invoke the interposition of a court of equity. A court of equity is not ordinarily the forum for litigating disputed claims. Crim v. Walker, 79 Mo. 335; Turner v. Adams, 46 Mo. 95; Martin v. Michael, 23 Mo. 50; Humphreys v. Milling Co., 98 Mo. 542; Mullen v. Hewitt, 103 Mo. 639; Edwards v. Rosenheim, 74 Mo. App. 621. The object is, in the first place, to reduce by judgment the creditor's claim to a certainty, and to show that he is in fact creditor. Merry v. Fremon et al., 44 Mo. 518; Thias v. Siener, 103 Mo. 314; Poulsen v. Van Steenbergh, 65 How. Pr. (N. Y.) 342.

But to the requirement of this rule there are a number of well recognized exceptions, one of which is where a party not subject to garnishment is indebted to an insolvent person, a court of equity will aid a creditor of such insolvent in appropriating this credit to the satisfaction of his demand, even though he had not reduced his claim in the first instance to a judgment in a court of law. Pendleton v. Perkins, 49 Mo. 565, was where the facts were substantially as here, except that the defendants were non-residents and no means existed for getting a judgment against them. In that case the court say: "It seems thus to be satisfactorily settled upon authority that when a debtor has absconded so that no personal judgment can be obtained against him, and there is no statutory proceeding by which his property can be reached, a creditors' bill will lie in the first instance, and from the necessities of the case. It is analagous to a proceeding to subject the equities of a deceased debtor, or to satisfy a debt from a specific equitable fund, as to enforce a lien, in neither of which cases is a personal judgment required, citing O'Brien v. Coulter, 2 Blackf.

421; Russell v. Clark's Heirs, 7 Cranch, 89." But here the debtors were residents and a judgment could have been had against them. Will this difference in the facts prevent the application to this case of the principles just stated?

Luthy v. Woods, 1 Mo. App. 167, is a case in which the essential facts were similar to these here, and where it was said: "It can not be said that the plaintiff has exhausted his legal remedies against Woods & Barnes (the debtors). Clearly he has done nothing of the kind. But he declares that it would be vain and useless to attempt to put in use against them any legal process; that they are completely proof against everything of this nature and that a resort to the equitable jurisdiction of the court is all from which he can hope for relief. Will the court, nevertheless, compel him to go through an empty form? Or is it an empty form? If it is an empty form the court will not compel him to comply with it. *Lex neminem cogit ad vana seu inutilia*—the law compelleth no man to do a vain or useless thing. This maxim of the common law and of common sense was lately approved by the decision of the supreme court in Savings Ass'n v. Kellogg, 52 Mo. 583. Says Chief Justice Kent, in Trustees, etc., v. Nicoll, 3 Johns. 566: 'It is one of the maxims of the common law which is also a dictate of common sense, that the law will not attempt to do an act which would be vain, or to enforce an act which would be frivolous. * * *' Nothing need be said in illustration of a principle so clearly vindicated. If the bringing of a suit and the obtaining of a judgment against the debtor were indeed an empty form, the law will not exact compliance with it." See Guerney v. Moore, 131 Mo. 650.

The defendants insist that while Luthy v. Woods, *supra*, has not been expressly overruled that it has been in effect overthrown by other and later adjudications. The case was again before the court in 1878 when the principles announced when it was there in the first instance were reaffirmed. 6 Mo. App. 67. In Dodd v. Levy, 10 Mo. App. 123, it was said: "The

case of Luthy v. Woods was like the preceding (Pendleton v. Perkins, *supra*), except that the debtors were residents of the state and a personal judgment could have been had against them without difficulty. But the fund, against which the creditor proceeded without first establishing his demand by judgment, was in the hands of the St. Louis School Board, so that, by force of statute, it was not subject to garnishment either under attachment or execution. There is a vital distinction between that case and the case at bar. There the creditor could not impound the fund by attachment, and unless he had been permitted to bring his bill in equity in the first instance he might have lost his remedy altogether. But in the present case, the debtor, though a non-resident, has tangible property in this state which can not run away."

In Kein v. School Dist. 42 Mo. App. loc. cit. 462, it was said: "Luthy v. Woods, 1 Mo. App. 167, was where the board of directors of the St. Louis Public Schools were indebted to Woods & Barnes, who were insolvent and indebted to the plaintiff, and it was held that an action in equity against the school board to satisfy the plaintiff's debt out of the amount it owed Woods & Barnes, could be sustained on the ground that Woods & Barnes were insolvent, and the school board was not subject to garnishment. The case is again reported in 6 Mo. App. 67, when it was finally disposed of without any departure from the ruling made when it was first decided."

In White v. University, 49 Mo. App. 450, it was said: "There is no doubt as to the general proposition that, where a creditor seeks to set aside the alleged fraudulent conveyance of his debtor, he must come into a court of equity with an adjudicated demand. He has no right to question the act of his alleged debtor, unless he is shown to be a genuine *bona fide* creditor; and, as a general rule, it is held that this must first be established by the judgment of a court of law. But this rule even has many exceptions. While admitting it to be necessary that a party shall first exhaust every legal remedy before

resorting to the court of equity, yet the courts have, in a great variety of cases, permitted the creditor to apply in the first instance to the court of chancery, as, for example, where it appears manifest that a suit at law would be wholly unavailing, citing Luthy v. Woods, 1 Mo. App. 168." It is thus seen that Luthy v. Woods, has been several times approved and followed by both decisions of the court of appeals.

We have examined most of the cases cited in the brief of counsel for the defendant which are supposed to be contrary to Luthy v. Woods, but these, we find, no more than announce the well established rule that before a creditor can have the aid of a court of equity he must exhaust his remedies at law, or, in a case of this kind, he must first reduce his claim to a judgment. But to this general rule these cases declare there are a number of exceptions: Such, for example, as when it is impossible to obtain a judgment on account of absence or non-residence of the debtor; or where there is no dispute as to the debt, and the debtor died notoriously insolvent; or where the fund to be reached is a trust fund for the benefit of all creditors, as the assets of an insolvent corporation or limited partnership; or where it is sought by a creditor to enforce a lien, and the like; but none of these cases hold that these are the only exceptions to the rule. We discover nothing in any of the cases to which we have been referred that either expressly or impliedly overrule Luthy v. Woods.

The goods were in the possession of the trustee after condition broken. The debtors still had their equity of redemption therein until foreclosure was completed. They were entitled to the surplus after the payment of the bank debt. The debtors' equity of redemption could not be reached by attachment, execution or garnishment; or, in other words, it was not subject to be impounded by legal process as against the rights of the trustee to possession. Fahy v. Gordon, 133 Mo. loc. cit. 427; Yeldell v. Stemmons, 15 Mo. 443; Boyce v. Smith, 16 Mo. 317. The case presented by the petition

is one where the debtors are insolvent and have no property interests except the equity of redemption in a stock of goods in the possession of the mortgagee, after conditions broken, so that the same can not be touched by legal process. The debtors' interest in the goods can no more be reached by legal process than could a debt due him by a public school district, a municipal or other public corporation or the interest of a deceased insolvent debtor in property fraudulently conveyed or covered up with a pretensive trust. And a suit at law against the debtors, though service of process could be had on one of them, would be vain, since they were insolvent—law proof.

There may be cases where the debt is disputed and where there are issues of fact in respect thereto which the debtor is entitled to have submitted to a jury, and a court of equity would refuse, in that event, to further entertain jurisdiction of the cause but nothing of this kind appears upon the record here. What sense would there have been in requiring the plaintiff to reduce his claim to judgment before allowing it to invoke the aid of a court of equity to enable it to reach the debtors' equity in the mortgaged goods? After the delay and cost incident to the procurement of the judgment the plaintiff would have been in no better situation and the debtors in no worse than they were had no suit been begun. Why resort to a court of law to merge the debt into a judgment when it was already undisputed? Why require the plaintiff to do a vain and useless thing before the door of a court of equity would be open to him? The only effect of requiring the plaintiff to reduce his claim to judgment would have been to give the debtors an opportunity to fraudulently dispose of their equity of redemption, or to give a preference to other creditors whose debts were no more entitled to be paid than that of plaintiffs. A court of equity, which always delights in equality in such case would hardly refuse to entertain jurisdiction of a creditors' bill because the plaintiffs had not reduced their

claim to judgment. It seems to us that the trial court in overruling the defendants' demurrer and allowing the cause to proceed acted in accordance with the principles of an enlightened and progressive equity jurisprudence, with which, therefore, we can find no fault.

But the defendants complain of the action of the court in distributing the assets of the debtors *pari passu* among plaintiffs, the defendants—Hundley-Frazer Dry Goods Co.— and August, the only general creditors, because they say that they are entitled to the whole of the surplus under their second deed of trust. As previously stated, the plaintiffs' petition and the process issued thereon was served on the trustee and the other defendants prior to the delivery and recording of such deed of trust. This was, in effect, a *lis pendens* as to the defendants. It is now well settled that the doctrine of *lis pendens* applies to personalty except negotiable paper and ordinary articles of commerce. Carr v. Coal Co., 15 Mo. App. 551, and authorities there referred to.

The doctrine is an equitable one, but in law the same effect is produced by the rule that the purchaser takes only the title of the vendor. Every man is supposed to be attentive to what passes in the superior courts of the sovereignty where he resides, and some courts have based the doctrine upon the theory of notice. But it would seem that the doctrine really rests upon public policy which does not allow litigating parties to give others, pending the litigation, rights to the property so as to prejudice the opposite party. Carr v. Coal Co., *supra*; Newman v. Chapman, 2 Rand. 93; Bellamy v. Sabine, 1 De. G. & J. 566. The common law authorities are uniform to the effect that in suits in chancery *lis pendens* commences at least after the subpoena is served. Herrington v. Herrington, 27 Mo. 560; Fenwick v. Gill, 38 Mo. 510; Metcalf v. Smith, 40 Mo. 572; Bennett on *Lis Pendens*, secs, 72, 73; Bensley v. Water Co., 13 Cal. 306; Corwin v. Bensley, 43 Cal. 263; Burroughs v. Reiger, 12 How. Pr. 170.

The defendants insist that the plaintiffs acquired no lien on the debtors' equitable assets by reason of the *lis pendens*, or, in other words, that the filing of the plaintiffs' creditors' bill created no lien in their favor; and this seems to be so under the ruling of the supreme court in Rieper v. Rieper, 79 Mo. 352, and in St. Louis v. Lumber Co., 114 Mo. 74. If the filing of the plaintiffs' petition and the service of process issued thereon did not create a lien in favor of the plaintiffs then what effect did it have, if any, on the rights and power of the parties in respect to the assets in dispute? The principle of the rule *lis pendens* is of common law origin. The rule itself was first formulated by Lord Chancellor Bacon. It was adopted for the better and more regular administration of parties in chancery. It provided: "No decree bindeth any that cometh in *bona fide* by conveyance from the defendant before the bill exhibited and is made no party, neither by bill, nor the order; but, where he comes in *pendente lite*, and, while the suit is in full prosecution, and without any color of allowance or privity of the court, there regularly the decree bindeth; but, if there were any intermissions of suit, or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice." Bennett's *Lis Pendens*, sec. 1. It is stated in section 9 of the work of the author just cited that the better opinion is that the rule is derived from Roman law, in which it was provided: "A thing concerning which there is a controversy is prohibited, during the suit, from being alienated. '*Rem de qua controversia prohibemur in acrum dedicare.*'"

The underlying principle upon which *lis pendens* rests is, that during the pendency of the suit an alienee may be bound by the proceedings therein subject to the alienation, and that such purchaser may be bound by the judgment or decree in the suit without being made a party. The common law maxim is: *Pendente lite nihil innovitur.* 2 Bouv. Law Dict. 120. The sole object of *lis pendens* is to keep the subject in controversy

within the power of the court until the decree is entered, and thus make it possible to give effect to the decrees of courts of justice.   Coke Lit. 344b.

In Newman v. Chapman, 2 Rand. 93, it is said:   "The rule as to effect of *lis pendens* is founded upon the necessity of such rule, to give effect to the proceedings of courts of justice.   Without it, the administration of justice might in all cases be frustrated by successive alienations of the property which was the object of the litigation pending the suit, so that every judgment and decree would be rendered abortive where the recovery of specific property was the object."   To the same effect is Murray v. Ballou, 1 Johns. Ch. R. 576.   In *pendente lite* neither party to the litigation can alienate the property in dispute so as to affect his opponent.   The necessities of mankind require that the decision of the court in the suit shall be binding, not only on the litigants but also on those who derive title under them by alienation made pending the suit whether such alienee had not notice of the proceedings. Bellamy v. Sabine, 1 De. G. & J. 566.   In Carr v. Coal Co., *supra*, the case of Newman v. Chapman, *supra*, is approvingly quoted to the effect:   "The publicity of judicial proceedings is the same in either case and the danger of defeating the decrees of a court by transfer of that to which they relate is much greater in the case of movable property than in that of real estate.   So that, for the protection of litigants it would seem a still more rigid rule should be promulgated to prevent the disposal of personalty than of realty *pendente lite*."   Although often referred to, as a lien, *lis pendens* is strictly not a lien.   It is simply the power or force of the jurisdiction of the court.   It is of itself simply the power of the court, taking effect upon the subject-matter of the litigation so as to preserve the *status quo*—hold it within the grasp of the court for the execution of the final decree or judgment.   Bennett on *Lis Pendens*, section 126.

It would therefore seem from these considerations that as

the second deed of trust was executed *pendente lite*, that it was not in the power of the debtors to change or alter by alienation their interest in the equity of redemption in the property which was the object of the suit. That equity was in no wise affected by the conveyance. The status of the debtors' interest at the time of the decree was not different from that which it was at the time of the filing of the petition and the service of process issued thereon.

The defendants, but for the said second deed of trust, do not pretend to be more than general creditors and since that instrument was ineffectual it must necessarily follow that they were no more than general creditors along with plaintiff and as such were entitled to have the assets in controversy distributed *pari passu* among them all. 1 Story's Eq. 544; Rieper v. Rieper, 79 Mo. 360.

But the plaintiffs claim that inasmuch as the goods for which the debtors are indebted to them were procured from them by fraud, and under such circumstances as entitled them to reclaim the same in the hands of the debtor, that therefore their right to the fund is superior in equity to that of the defendant creditors. The plaintiffs elected to affirm the contract of sale so made and to proceed on the contract as if there was an absence of fraud. They waived whatever rights they had growing out of the fraud and voluntarily placed themselves in the same attitude as the other simple contract creditors. We do not perceive that the doctrine announced in Valentine v. Decker, 43 Mo. 583, and the other cases cited by the plaintiff to the same effect, is invocable in a case like this. Plaintiffs and defendants each claim a priority or preference entitling them to the whole of the assets remaining in the hands of the trustee. The trial court declined, and as we think rightly, to recognize the claim of either, but found they were all general creditors and, under the facts disclosed by the evidence, entitled to share ratably in the distribution of the

assets affected by the suit, and this, it seems to us, was highly equitable.

The other points, to which our attention has been called in the brief of counsel, and not hereinbefore alluded to, have been considered and found without merit.

The decree of the circuit court will accordingly be affirmed. All concur.