WILLIAMS et al. v. ADLER-GOLDMAN COMMISSION CO. et al.

(Circuit Court of Appeals, Eighth Circuit.    September 13, 1915.)

No. 4354.

1. CREDITORS' SUIT ⊕⟹11—NECESSITY OF PRIOR JUDGMENT—NONRESIDENCE
AND INSOLVENCY OF DEBTOR.
    A federal court of equity has jurisdiction of a suit by creditors to set
    aside a fraudulent conveyance, although they have not reduced their
    claims to judgment, upon allegation and proof that the debtor has left
    the jurisdiction and is insolvent.
    [Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 46-66;
    Dec. Dig. ⊕⟹11.]

2. COURTS ⊕⟹359—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—
FRAUDULENT CONVEYANCES.
    Whether a conveyance is fraudulent as to creditors must be determined
    in a federal court by the local law.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 939-949;  Dec.
    Dig. ⊕⟹359.
    State laws as rules of decision in federal courts, see notes to Wilson v.
    Perrin, 11 C. C. A. 71;  Hill v. Hite, 29 C. C. A. 553.]

3. FRAUDULENT CONVEYANCES ⊕⟹104—TRANSFERS. INVALID—HUSBAND AND
WIFE.
    Under the law of Arkansas as established by decision, the conveyance
    by a husband to his wife of land which stood in his name at the time he
    contracted debts, the creditors relying on his apparent ownership, is
    fraudulent as to such creditors.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§
    337-344;  Dec. Dig. ⊕⟹104.]

4. COURTS ⊕⟹347—PRACTICE UNDER EQUITY RULES—PLEADING—SET-OFF.
    Allegations in an answer, intended to plead a set-off, held insufficient
    under equity rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi).
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 921;  Dec. Dig.
    ⊕⟹347.]

Appeal from the District Court of the United States for the Eastern District of Arkansas;  Jacob Trieber, Judge.

Suit in equity by the Adler-Goldman Commission Company and the Arkansas Fertilizer Company against F. S. Williams and Viola M. Williams.  Decree for complainants, and defendants appeal.  Affirmed.

Harry H. Myers and O. D. Longstreth, both of Little Rock, Ark., for appellants.

W. E. Hemingway, G. B. Rose, D. H. Cantrell, J. F. Loughborough, and V. M. Miles, all of Little Rock. Ark., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge.  This was a general creditors' bill brought by The Adler-Goldman Commission Company and Arkansas Fertilizer Company against F. S. Williams and Viola, his wife, appellants, to

⊕⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

adjudicate complainants' claims, to set aside a conveyance of real property from husband to wife as fraudulent, to subject that property to the payment of the husband's debts, and to sell certain corporate shares put up by Williams as collateral security for his indebtedness to one of the complainants, and apply the proceeds. The pledgee was not given power to sell the shares. The decree gave the complainants the relief sought.

The property is in the state of Arkansas, Eastern District, and Williams had resided there, but he and his wife moved away and were residents and citizens of South Carolina when the bill was exhibited. The complainants were Missouri corporations.

Williams bought the lands in May, 1900, with his wife's money; but he took title in his own name and held it until August, 1911, when he made the deed to his wife which is the conveyance charged in the bill to be fraudulent.

The bill further charged, and the great weight of the evidence tended to establish, that Williams was insolvent on making the conveyance, and had no property whatsoever in Arkansas subject to levy and sale, nor elsewhere, so far as the record discloses.

[1] The principal objection made below, and again presented here, is that the bill discloses that complainants are in a position that precludes them from coming into a court of equity; that their remedy is at law, which must be first exhausted by putting their claims in judgment, and utilizing, without avail, final process thereon—judgment, execution and officer's return nulla bona.

This general rule is plain enough and well established, even statutory (R. S. U. S. § 723), but we are unable to discover how "a plain, adequate and complete remedy may be had at law" by complainants. The defendant has not pointed it out. No judgment at law could have been obtained against him. He was without the jurisdiction and insolvent.

A prior judgment at law and unavailing process are not conditions on which equitable jurisdiction is founded. They do not constitute the basis on which the right to equitable relief rests. They are rather an element in procedure and not in equitable right. The facts which they are taken to establish, by the general rule, may be made to otherwise appear, and thus exceptions to the general rule are recognized and have become as well established as the rule itself.

The main purpose of the suit was to remove the fraudulent transfer to the wife so that the lands might be applied in satisfaction of the husband's debts.

The ground for equitable relief, pleaded in the bill, is the fraudulent transfer, which the Chancellor is empowered and required to search out and remove, and which cannot be done at law.

Non-residence of the debtor and also his insolvency have each been held sufficient to dispense with prior judgment and execution at law; the first, because of the great impracticability, if not impossibility, of proceeding against the debtor in that way, and the second, because it stands for what the judgment and execution would conclusively prove.

In Case v. Beauregard, 101 U. S. 688–690 (25 L. Ed. 1004), it is said:

"But, after all the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form, 'Bona, sed impossibilia non cogit lex.' It has been decided that where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference. * * *

"So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him."

In National Tube Works Co. v. Ballou, 146 U. S. 517–523, 13 Sup. Ct. 165, 166 (36 L. Ed. 1070), it is said:

"Where it is sought by equitable process to reach equitable interests of a debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an exection thereon, and its return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

See, also, Lazarus Jewelry Co. v. Steinhardt, 112 Fed. 614, 50 C. C. A. 393; Talley v. Curtain, 54 Fed. 43, 4 C. C. A. 177; Tank Co. v. Varnish Co. (C. C.) 45 Fed. 7, 16.

There is abundant state authority. That non-residence creates an exception to the rule, see Pope v. S. W. & W. Co., 36 Ga. 541; Quarl v. Abbett, 102 Ind. 233, 1 N. E. 476, 52 Am. Rep. 662; Kipper v. Glancey, 2 Blackf. (Ind.) 356; Taylor v. Branscombe, 74 Iowa, 534, 38 N. W. 400; Anderson v. Bradford, 5 J. J. Marsh. (Ky.) 69; Scott v. McMillen, 1 Litt. (Ky.) 302, 311, 13 Am. Dec. 239; Earle v. Grove, 92 Mich. 285, 52 N. W. 615; Williams v. Kemper, 99 Minn. 301, 109 N. W. 242; Burnham, M. & Co. v. Smith, 82 Mo. App. 35; Weaver v. Cressman, 21 Neb. 675, 33 N. W. 478; Peay v. Morrison, 10 Grat. (Va.) 149; Farrar v. Halselden, 9 Rich. Eq. (S. C.) 331; and that insolvency may be shown otherwise than by judgment at law and execution returned nulla bona, as creating an exception to the general rule, see Sage v. Railroad Co., 125 U. S. 361, 376, 8 Sup. Ct. 887, 31 L. Ed. 694; Austin v. Morris, 23 S. C. 393; Gordon v. Worthley, 48 Iowa, 429; Moffatt v. Tuttle, 35 Minn. 301, 28 N. W. 509; Turner v. Adams, 46 Mo. 99; Bank v. Wetmore, 124 N. Y. 241, 249, 26 N. E. 548; Schofield v. Ute C. & C. Co., 92 Fed. 269, 34 C. C. A. 334.

[2] The construction and effect of the conveyance from Williams to his wife must be determined by the lex loci rei sitæ. McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545; De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827; Green v. Van Buskirk, 5 Wall. 307, 18 L. Ed. 599.

[3] Williams held title to the lands for more than eleven years. During that time he treated the lands as his, and on more than one occasion represented that they were his. During that time all of the indebtedness to one of the complainants was contracted, and sub-

stantially all of the indebtedness to the other. There is evidence that the creditors relied on that apparent ownership as being true in extending credit; and the firmly established rule in Arkansas is that a conveyance from husband to wife, in such circumstances, is fraudulent as to creditors. Goodrich v. Bagnell Timber Co., 105 Ark. 90, 150 S. W. 406; Roberts v. Lumber Co., 84 Ark. 227, 105 S. W. 258; Davis v. Yonge, 74 Ark. 161, 166, 85 S. W. 90; Morris v. Fletcher, 67 Ark. 105, 111, 56 S. W. 1072, 77 Am. St. Rep. 87; Bank v. Norwood, 50 Ark. 46, 6 S. W. 323, 7 Am. St. Rep. 78.

[4] A cross-complaint appended to the answer was on motion stricken, and this is assigned as error. It counter-claimed against the Fertilizer Company. It was based on a verbal option given to Williams by one Goldman, who was a stockholder and the largest creditor of the Fertilizer Company. The terms of the option are stated thus:

"That about November, 1912, the said Goldman began pressing the company for his debt and threatened, to foreclose his loan and force the company into liquidation; that in order to avert this calamity, which would entail a heavy loss on him and the other stockholders, he went to see said Goldman and represented to him that if he, the said Goldman, would forbear to press his suit for collection of his loan and give him the option to the assets of the Fertilizer Company, he would undertake to organize a new company and sell sufficient stock therein to provide funds not only to care for his, Goldman's debt, but would also put the affairs of the old company in good shape; that Goldman thereupon agreed to this plan and gave him, the said F. S. Williams, an option on all the property and assets of the Arkansas Fertilizer Company, agreeing that if he would organize another company to take over the property of the old company and secure its debts and would sell as much, as One Hundred Thousand Dollars of stock in said new company, that the said Goldman would renew his debt and take stock in the new company in an amount of his holdings in the old company; while this option was not in writing, but it was made by the said Goldman to him, and he further agreed to desist pressing his debt against the company and allowed him, Williams, until June, 1913, in which to organize his new company."

This option "was agreed to and ratified by the directors of the Arkansas Fertilizer Company," and thereupon defendant "began the organization" of the Western Agricultural Company, to take over the holdings of the Arkansas Fertilizer Company. A prospectus of the Western Company is attached to the cross-complaint, showing that company to have an authorized capital of $3,000,000. There is no claim or suggestion in the cross-complaint that the Fertilizer Company or Goldman or the other stockholders of that company agreed to the plan proposed in the prospectus—the amount of capital stock, its division into common and preferred, the rate of income fixed on the preferred, etc. But Williams proceeded then to obtain "stock subscriptions in the new company, amounting to $64,000 actually sold, and had received assurances of additional stock subscriptions of $20,000, and pledges of purchase for the balance of the $100,-000, which J. D. Goldman demanded he sell under his optional agreement."

These efforts cost him a large sum. The plant of the Fertilizer Company burned down. That company and Goldman refused to perform, to the defendant's great damage in several specified items. Prayer for relief: (a) That the Fertilizer Company and Goldman

make an accounting of the affairs of the Fertilizer Company, (b) judgment for money expended in efforts under option, and (c) damages for refusal to carry out option.

We think the learned District Judge did not err in striking the cross-complaint: (1) It was based on a claimed transaction with Goldman, who was not a party to the suit; (2) essential elements to a clear and definite understanding between defendant and Goldman as to what was covered by the option, and as to what should be done under it, are lacking; (3) Goldman could not bind the Fertilizer Company; (4) the pleading does not show what obligation or duty Williams definitely assumed, nor that he ever kept and complied with it, and (5) the great per cent. in number and amount of items set up in the counter-claim are for unliquidated damages and could not "be the subject of an independent suit in equity," and none of the items arise "out of the transaction which is the subject-matter of the suit." Equity Rule 30 (198 Fed. xxvi, 115 C. C. A. xxvi).

We do not find error, and the decree is affirmed.